230 Cal.App.3d 1611 (1991)
282 Cal. Rptr. 105
In re BABY GIRL A., a Minor.
JOAN A., Plaintiff and Respondent,
v.
NATIVE VILLAGE OF AKHIOK, Movant and Appellant.
Docket No. G009615.
Court of Appeals of California, Fourth District, Division Three.
June 7, 1991.
*1613 COUNSEL
Jack F. Trope, Bertram E. Hirsch and Allogan Slagle for Movant and Appellant.
Van Deusen, Youmans & Walmsley and Christian R. Van Deusen for Plaintiff and Respondent.
Sylvia Paoli, under appointment by the Court of Appeal, for Minor.
[Opinion certified for partial publication.[*]]
OPINION
MOORE, J.
Joan A. filed a petition in the superior court seeking a determination of whether the Indian Child Welfare Act (25 U.S.C. § 1901 et seq.; hereinafter ICWA or the Act)[1] applied to a prospective independent adoption of Baby Girl A. (minor), her natural child, and asking the court to *1614 accept her consent to the proposed adoption. The Native Village of Akhiok, sought to intervene in the proceeding. Ultimately, the lower court denied its request. The village appeals from that order.
The parties seek resolution of two issues: (1) Whether appellant is entitled to intervene in what is described as a prospective adoption action under either the ICWA or state law; and (2) whether the ICWA's placement preferences would apply to that proceeding. On our own motion, we raised the question of whether a justiciable controversy exists giving California courts jurisdiction to reach the substantive issues. We conclude the matter is justiciable and, on the merits, hold the lower court erred by denying appellant the right to intervene, but that the ICWA's placement preferences must be considered in light of the entire language of the Act and the Department of Interior's interpretation of it.

FACTS
Appellant is a federally recognized Indian tribe. Respondent Joan A. was born to a couple who were members of the tribe in 1971. When respondent was three years old, she and her older sister were removed from the custody of their natural parents because of abuse and subsequently adopted by a non-Indian couple.
In late 1988, respondent became pregnant by John S., who is not an Indian. Respondent chose to place her unborn child for adoption with a non-Indian couple in New York. In April 1989, respondent went to live in New York. The minor was born June 10.
An attorney retained by the New York couple to handle the adoption informed appellant of the minor's birth. Appellant intervened and sought to take her. Respondent objected and returned to California with the child.
On June 13, the minor's great uncle, a member of appellant's village, applied to the tribal council to have the child accepted as a member of the tribe. The council considered the application July 1, and granted it by a unanimous vote. On July 27, respondent sent a letter to appellant resigning as a member of the tribe and giving up all rights stemming from her biological heritage.
In California, respondent obtained court-appointed counsel to assist her in completing the proposed adoption by the New York couple. The lower court ordered an adoption case number be issued for the matter and also appointed a separate attorney to represent the minor. On July 31, respondent filed the petition to determine the applicability of the ICWA and to accept her consent *1615 to an adoption of minor by the New York couple. John S. signed a declaration joining in this request. Appellant responded to the petition by making a motion to intervene in the proceeding.
The New York couple apparently decided not to proceed with the proposed adoption of the minor. On September 21, respondent dismissed the California proceeding. She then took the child to Canada and relinquished her to a couple in British Columbia. On October 2, the couple filed a notice initiating a private adoption with the British Columbia Superintendent of Child and Family Service.
Appellant learned of respondent's new effort and informed Canadian authorities it claimed rights in relation to the minor and wanted to protect the minor's rights as an Indian child and member of the tribe. The Canadian couple with whom respondent placed the minor, obtained a court order granting them interim custody and guardianship of the child. The Superintendent of Child and Family Service petitioned the British Columbia Supreme Court[2] for directions. Appellant filed a counterpetition, and an Akhiok couple applied for custody of the minor.
Meanwhile, appellant also filed a cross-petition in the California proceeding seeking court orders: (1) Requiring respondent to divulge the minor's whereabouts, and revoking any consent to placement of the minor that did not comply with the ICWA; (2) issuing an order to show cause for respondent's arrest; and (3) making the minor a ward of the court. Appellant argued, inter alia, the ICWA gave it authority to direct the minor's placement. Both respondent and the minor's court-appointed attorney responded to this petition.
On January 5, 1990, the British Columbia Supreme Court issued a decision concluding Canada lacked jurisdiction over the minor, she had been wrongfully removed from California, and this state was the proper forum for determining the minor's adoptive placement. The Canadian couple seeking to adopt the minor appealed the decision. Apparently, that appeal is still pending.
A hearing in the California proceeding was held January 19. The court vacated the dismissal of the original petition, nunc pro tunc, as of September 21, 1989, allowed appellant to intervene in the action, and found the ICWA applied to this case. It directed temporary custody of the minor remain with the couple in British Columbia pending further hearing on the applicability of the ICWA's placement preferences.
*1616 Respondent timely filed a motion for reconsideration seeking to vacate the trial court's order permitting appellant's intervention in the proceeding.[3] She contended the ICWA did not permit an Indian tribe to intervene in a voluntary adoption proceeding, and granting intervention in this case would violate her constitutional rights as a parent. Appellant opposed the motion, arguing it was entitled to intervene under either the ICWA or Code of Civil Procedure section 387.
After a hearing, the lower court granted respondent's motion to reconsider and then found appellant did not have the right to intervene in this case. The trial judge agreed appellant had enrolled the minor as a member of the tribe. But he reasoned that by not requiring notice to Indian tribes in voluntary proceedings, Congress intended to preclude them from intervening in such cases or requiring state courts hearing voluntary adoptions to follow the Act's placement preferences.

DISCUSSION

I. Existence of a Justiciable Controversy[*]
.... .... .... .... .... .... .... .

II. Appellant's Right to Intervene in the Action

(1a) Appellant's primary argument is that it is entitled to intervene in this case. In support of its claim, appellant cites section 1911(c) and the United States Supreme Court's decision in Mississippi Choctaw Indian Band v. Holyfield [1989] 490 U.S. 30 [104 L.Ed.2d 29, 109 S.Ct. 1597], and contends the lower court erred by finding the absence of a notice requirement in section 1913 supported an opposite conclusion. Alternatively, appellant claims it is entitled to intervene under state law.
Section 1911(c) of the ICWA states in part: "In any State court proceeding for the foster care placement of, or termination of parental rights to, an Indian child, the ... Indian child's tribe shall have a right to intervene at any point in the proceeding." (Italics added.) Thus, the Act limits a tribe's right to intervene to only foster care placements and actions terminating parental rights. The present case is an ancillary proceeding intended to assist in *1617 completing a voluntary adoptive placement. (§ 1903(1)(iv).) Section 1911(c), does not give appellant an automatic right to intervene in this case.[6]
Appellant's reliance on Mississippi Choctaw Indian Band v. Holyfield, supra, 490 U.S. 30, is misplaced. There an unmarried Indian woman living on the tribe's reservation left it temporarily to give birth to twins. Then she and the children's natural father, who was also an Indian and living on the reservation, voluntarily consented to the twins adoption by a non-Indian couple. The tribe's motion to vacate the adoption was denied. The United States Supreme Court reversed, finding the natural mother was domiciled on the reservation, and the childrens' domicile was the same as hers until the adoption proceeding had been concluded. Therefore, under section 1911, subdivision (a), the tribe had exclusive jurisdiction over the matter. (Id. at pp. 48-49 [104 L.Ed.2d. at pp. 46-47].)
A case similar to the present appeal is Matter of J.R.S. (Alaska 1984) 690 P.2d 10. There the state removed an Indian child from his mother's custody for abuse. Prior to the removal the mother was not living on an Indian reservation. Later, she voluntarily relinquished her parental rights. A couple petitioned to adopt the minor. Several months later the mother's tribe sought to intervene in both the parental rights termination action and the adoption proceeding. The trial court permitted the tribe to intervene in the termination action only.
First, the Alaska Supreme Court rejected a claim the ICWA authorized the tribe's intervention in the adoption proceeding. The court noted that the ICWA itself "does not give a tribe the right to intervene in an adoption proceeding...." (690 P.2d at p. 15.) It then held: "The Act thus distinguishes between `adoptive placement' and `termination of parental rights'; only in the latter case does § 1911(c) support intervention. In short, we think Congress recognized that terminations and adoptions might be handled in separate actions. In Alaska, for example, the two proceedings are fundamentally different. [Citations.] If Congress believed that a tribe which had *1618 intervened in a termination proceeding would automatically be allowed to participate in an adoption proceeding, the Act it passed does not reflect this belief." (690 P.2d at pp. 15-16.)
But, the court agreed that "neither the Act nor its legislative history establishes the contrary position the adoptive parents present: that Congress implicitly forbade state courts to allow tribes to intervene in adoptive proceedings...." (690 P.2d at p. 16.) Shifting its focus to state law which is similar to Code of Civil Procedure section 387, the court concluded intervention was necessary to preserve the tribe's central role in child custody proceedings: "An Indian tribe may petition a state court to set aside actions which violate Indian parents' rights or improperly take jurisdiction from a tribal court, but the [Act] does not provide for the filing of such a petition if a state ignores § 1915's adoptive preferences. [Citation.] Procedurally, the tribe must intervene if it is to defend the Act's preference system...." (Id. at p. 18.) The court also held none of the other parties to the adoption proceeding adequately represented the tribe's interests. (Id. at pp. 18-19.)
The same is true here. While the ICWA does not expressly grant appellant the right to intervene in a voluntary adoption proceeding, neither does it preclude intervention. Respondent relies on the maxim expressio unius est exclusio alterius ("expression of one thing is the exclusion of another"). But that rule will not be used to contradict or vary a clear expression of legislative intent. (Williams v. Los Angeles Metropolitan Transit Authority (1968) 68 Cal.2d 599, 603 [68 Cal. Rptr. 297, 440 P.2d 497].) Congress made it very clear the ICWA is intended to protect the rights of Indian tribes as well as those of Indian children and families. (§§ 1901(3), 1902.)
Contrary to respondent's claim, appellant did seek intervention under state law in its opposition to the motion to reconsider. (2) Code of Civil Procedure section 387, subdivision (a) states in part: "Upon timely application, any person, who has an interest in the matter in litigation, or in the success of either of the parties, or an interest against both, may intervene in the action or proceeding." The statute's purpose is to protect the interests of persons affected by a judgment, obviate delay and avoid multiplicity of actions. (People v. Superior Court (Good) (1976) 17 Cal.3d 732, 736 [131 Cal. Rptr. 800, 552 P.2d 760]; Deutschmann v. Sears, Roebuck & Co. (1982) 132 Cal. App.3d 912, 915 [183 Cal. Rptr. 573].)
(3) Strictly speaking, adoptions are special proceedings and not subject to statutes governing civil actions generally. (Code Civ. Proc., §§ 23, 307 et seq.; Adoption of Thevenin (1961) 189 Cal. App.2d 245, 251 [11 Cal. Rptr. 219].) But parties with a sufficient interest may be permitted to intervene in *1619 an adoption proceeding. In Adoption of Lenn E. (1986) 182 Cal. App.3d 210 [227 Cal. Rptr. 63], the Court of Appeal upheld a trial court's order granting maternal grandparents the right to intervene in an adoption proceeding brought by the child's paternal grandparents, and gave them standing to appeal the adoption decree. (Id. at pp. 217-220; see also Reeves v. Bailey (1975) 53 Cal. App.3d 1019, 1023 [126 Cal. Rptr. 51].) We conclude the same rule should apply here as well.
(1b) The lower court erred by denying appellant's intervention in this case. While the ICWA does not expressly permit appellant to intervene and an attorney was appointed to represent the minor, the interests of the tribe under the Act are sufficiently important to support allowing it to join this proceeding and its interests are not coextensive with those of the minor.[7]

III. Application of the ICWA's Placement Preferences

(4a) A determination of whether or not the lower court must employ the Act's placement preferences is not necessary to a resolution of the case. But the parties raised this issue both here and in the lower court, and we note the prospect of applying the statutory preferences was a factor in the lower court's ruling. Because we are reversing that decision and the placement issue will arise again, because of the uncertainty existing in the law concerning it, and because any further delay will prejudice the child, we shall give the lower court guidance on the matter. (Code Civ. Proc., § 43.)
(5) Respondent argues application of the ICWA's placement preferences to this case would violate her constitutional right to choose who will adopt her child, and California law affords greater protection to her than the ICWA. These arguments are without merit.
As noted, this case involves a voluntary adoption. Until respondent signs a formal consent to the adoption, she may choose to retain the minor. (Civ. Code, § 226a.) But if she chooses to proceed with it, her choice of the adopting parents is not entirely unfettered. (See Civ. Code, § 226.2.) By enacting the ICWA, Congress has placed further conditions on the choice of prospective parents when placing an Indian child for adoption.
(4b) Neither is respondent's reliance on section 1921 persuasive. That section permits a court to apply a state or other federal law to a child custody proceeding involving an Indian child if it "provides a higher standard of protection to the rights of the parent or Indian custodian of an Indian child" *1620 than the ICWA. Section 1921 refers to state laws or federal statutes that protect the "rights guaranteed by the Act." (See Guidelines for State Courts, Indian Child Custody Proceedings, 44 Fed.Reg. 67584 (Nov. 26, 1979), hereinafter guidelines.) Respondent is seeking to protect rights that are separate and apart from those contained in the ICWA.
Nonetheless, the lower court is not required to comply with the ICWA's statutory placement preferences. Section 1915(a) provides in part: "In any adoptive placement of an Indian child under State law, a preference shall be given, in the absence of good cause to the contrary, to a placement with [¶] (1) a member of the child's extended family; [¶] (2) other members of the Indian child's tribe; or [¶] (3) other Indian families." (Italics added.) Section 1915(c) gives the tribe the authority to alter the order of preference but it also provides that, "[w]here appropriate, the preference of the Indian child or parent shall be considered...."
The Act does not define what is meant by "in the absence of good cause to the contrary." However, that phrase is explained in the Department of Interior's guidelines. Section F.3(a) thereof states: "For purposes of foster care, preadoptive or adoptive placement, a determination of good cause not to follow the order of preference ... shall be based on one or more of the following considerations: [¶] (i) The request of the biological parents...." (Guidelines, 44 Fed.Reg. at p. 67594.) Although the guidelines do not have binding legislative effect, they "are a useful aid in interpreting [the Act's] provisions...." (In re Robert T. (1988) 200 Cal. App.3d 657, 663 [246 Cal. Rptr. 168] [guidelines used to interpret similar language found in § 1911(b)].)
Here, both respondent and the minor's natural father have made it clear, by their words and actions, that they do not want the child placed with an Indian family. In addition, we note the minor is only part Indian. She has never lived in appellant's village nor in a tribal environment. If the natural parents choose not to place the child for adoption, she will not be raised in an Indian culture.
Citing Mississippi Choctaw Indian Band v. Holyfield, supra, 490 U.S. 30 and Matter of Adoption of Halloway (Utah 1986) 732 P.2d 962, appellant argues its right to assert a placement preference is equivalent to respondent's. Both of these cases involved an interpretation of section 1911(a), which grants Indian tribes exclusive jurisdiction over child custody proceedings concerning Indian children residing or domiciled on the reservation. In Halloway, the Utah Supreme Court noted the tribe's interest in its children "is distinct from but on a parity with the interest of the parents." (Id. at p. 969.) The United States Supreme Court's opinion in Holyfield quoted this *1621 language with approval. (490 U.S. at p. 53 [104 L.Ed.2d at p. 49.]) In context, the statement refers to the tribe's interest in dealing "with children of domiciliaries of the reservation...." (Matter of Adoption of Halloway, supra, 732 P.2d at p. 969.)
The tribe's interest in actions involving Indian children living off the reservation is not as great. A review of the ICWA's provisions supports this difference in the interests and rights between an Indian child's parents and his or her tribe. For example section 1911(b) grants a preference to tribal courts in foster care and parental termination matters where an Indian child resides or is domiciled off the reservation "absent objection by either parent." (Italics added.) Also, section 1913(a) permits an Indian parent or custodian to voluntarily consent to a foster care placement or termination of parental rights without first notifying the tribe. Finally, under section 1915(c), the Indian parent's placement preference must be considered "[w]here appropriate."
Furthermore, this interpretation of the ICWA does not entirely preclude an Indian child adopted by non-Indians from discovering and reestablishing his or her roots later on in life. Section 1917 permits an adopted Indian to receive information on his or her "tribal affiliation ... and ... such other information as may be necessary to protect any rights flowing from the individual's tribal relationship" upon reaching the age of 18.
Therefore, upon remand the lower court should review the Act's placement preferences in light of the foregoing discussion and the evidence produced by the parties.

DISPOSITION
The order denying appellant's motion to intervene in this proceeding is reversed, and the matter remanded to the superior court with directions to grant the motion and to conduct further proceedings consistent with this opinion. In the event the Canadian adoption proceeding is revived, Canadian authorities can, pursuant to principles of comity, decide whether to give effect to the lower court's findings concerning placement under the ICWA. The parties shall bear their own costs on appeal.
Sonenshine, Acting P.J., concurred.
CROSBY, J., Dissenting.
The majority's reasoning is unsound in several respects, and the relief afforded by the lead opinion is unclear and unnecessary. As explained below, we can  and should  simply end the matter now *1622 by affirming the order of the superior court, even though it, too, was grounded on an incorrect reading of the law.
Preliminarily, I note the trial court found this proceeding to determine the voluntariness of the mother's relinquishment of her American Indian child for adoption to be governed by the Indian Child Welfare Act (25 U.S.C. § 1901 et seq.) (ICWA). (Compare, Matter of Adoption of Baby Boy L. (1982) 231 Kan. 199 [643 P.2d 168].) No one has made a serious argument to the contrary here (except the majority); this is hardly surprising, given that the very purpose of the mother's petition was to comply with the ICWA. Yet my colleagues conclude the Native Village of Akhiok has no right under the ICWA to intervene. They explain the Orange County Superior Court action is not one to terminate parental rights, but is "an ancillary proceeding intended to assist in completing a voluntary adoptive placement." This is simply incorrect.
Section 1903(1)(ii) of the ICWA defines "`termination of parental rights'" as "any action resulting in the termination of the parent-child relationship." A birth mother's voluntary consent to the adoption of her child is nothing if not the first step toward the termination of her parental rights. Also, it is somewhat disingenuous to say the current proceedings are merely "ancillary" to an adoption proceeding. Although no adoption is pending here, the whole point of the inquiry below was to facilitate an adoption via a voluntary relinquishment in compliance with the ICWA. While it was plainly required by the ICWA, it had exactly no purpose under California law. (See maj. opn., ante, p. 1617, fn. 6.)
Section 1911(c) of 25 United States Code provides, "... the Indian child's tribe shall have a right to intervene at any point in the proceeding" for termination of parental rights. Thus, the tribe has a federal right of intervention; resort to Code of Civil Procedure section 387, subdivision (a) is unnecessary.[1]
Section 1913[2] of 25 United States Code sets forth the requirements for a birth mother's consent to termination of her parental rights and an adoptive placement. Subdivision (a) describes the procedures: "... [S]uch consent shall not be valid unless executed in writing and recorded before a judge of a court of competent jurisdiction and accompanied by the presiding judge's *1623 certificate that the terms and consequences of the consent were fully explained in detail and were fully understood by the parent.... The court shall also certify that [] the parent ... fully understood the explanation in English or that it was interpreted into a language that the parent ... understood. Any consent given prior to, or within ten days after, birth of the Indian child shall not be valid." This subdivision is obviously designed to ensure that nontribal adoption agencies and placement counselors do not coerce or defraud Indian parents into surrendering their children for adoption by non-Indian families.
In the event a valid consent is given, federal law provides additional safeguards: Section 1913(c) states, "In any voluntary proceeding for termination of parental rights to, or adoptive placement of, an Indian child, the consent of the parent may be withdrawn for any reason at any time prior to the entry of a final decree of termination or adoption, as the case may be, and the child shall be returned to the parent." Within two years "[a]fter the entry of a final decree of adoption of an Indian child in any State court, the parent may withdraw consent thereto upon the grounds that consent was obtained through fraud or duress and may petition the court to vacate such decree...."[3] (25 U.S.C. § 1913(d).)
As the birth mother's consent to the adoption of her Indian child is governed by federal law, so is the tribe's role in the proceedings. (25 U.S.C. § 1911(c).) Section 1914 of 25 United States Code (alluded to in fn. 6) severely limits its prerogatives in the case of Indians not domiciled on a reservation: "[When an] Indian child [] is the subject of any action for ... termination of parental rights under State law,... the Indian child's tribe may petition any court of competent jurisdiction to invalidate such action upon a showing that such action violated any provision of sections 1911, 1912, and 1913 of this title." (Italics added.) Only 25 United States Code section 1913, concerning a parent's voluntary placement of an Indian child for adoption, is applicable here.[4]
*1624 Thus, while the ICWA gives the tribe the right to intervene, that can only be for the purpose of challenging the validity of Joan A.'s consent to the adoption on the statutory grounds, i.e., that her rights as a parent were not fully explained or understood by her or that her consent was obtained either before or within 10 days after the birth of the child.[5] (§ 1913(a).) The tribe cannot raise any other challenge to the birth mother's consent or claim jurisdiction in the tribal courts over her objection. The majority opinion errs in failing to recognize the futility of the tribe's intervention under the present facts.
I also disagree with the majority's statement that "the placement issue will arise again." That should not happen in California. First, the ICWA's placement preferences apply only in the case of an "adoptive placement of an Indian child under State law." (§ 1915.) As already discussed, no adoption petition is pending here. Nor is one likely. The child has resided for most of her life with prospective adoptive parents in Canada. They cannot adopt her in this state. And the Orange County Superior Court certainly lacks jurisdiction to compel a court of a sovereign foreign nation to follow a United States statute, although, commendably, the Canadian courts have deferred while issues are pending in this jurisdiction.
Second, the birth mother has insisted that if the court does not approve her consent to the baby's adoption by the Canadian family, she will raise the child herself. This was precisely the situation faced by the Supreme Court of Kansas in Matter of Adoption of Baby Boy L, supra, 643 P.2d 168. The child's birth parents were not married. His mother was a non-Indian, and his father was a member of the Kiowa Tribe. A petition to involuntarily terminate the father's parental rights was filed, and the tribe was given notice per 25 United States Code section 1912. In the meantime, the birth mother consented to the child's adoption by a non-Indian couple.
The trial court determined the tribe had no right to intervene and terminated the father's parental rights. Although the Kansas Supreme Court found *1625 the Act did not apply at all (on the dubious basis of the child's illegitimacy), it went to considerable lengths to explain, "for the sake of argument, if we were to hold that the ICWA applied to these proceedings then we still fail to see where any reversible error could exist." (Matter of Adoption of Baby Boy L., supra, 643 P.2d at p. 176.) The court observed, "The mother of Baby Boy L. gave a consent to the [prospective adoptive parents]. The consent was limited to [them] and was for their benefit only. She has made it clear that if this adoption was denied for any reason, or if an attempt was made to place the child for adoption under the terms of the Act, she would revoke her consent and again take custody of her child, and never consent to his placement with his father or with the father's extended Indian family, the Kiowa Tribe, the grandparents or anyone else." (Id. at p. 177.)
The court then stated, "Any attempt to effect the preferential placement contemplated by the Act would necessarily result in the removal of the baby from the custody of [the prospective adoptive parents] and thereupon there being no consent by the mother to any such action, the child would be returned to her. We do not believe that the Congress intended such ridiculous results nor do we believe that the Kiowa Tribe could in good faith recommend such a procedure.... It is elementary that the law, including the ICWA, and the courts do not require citizens and litigants to perform useless acts and be subjected to useless court proceedings where there is no possibility of any positive result for anyone." (643 P.2d at p. 177.) I think the Kansas court was correct on that point. When a nonreservation parent voluntarily and validly consents to relinquish an Indian child and refuses to consent to a tribal placement, nothing in the ICWA gives the tribe the right to attack, much less veto, the parent's decision.
My analysis does no violence to the public policy behind the ICWA. Baby Girl A. has never lived on a reservation and is not part of an "Indian famil[y] [] broken up by [an unwarranted] removal ... by nontribal public and private agencies." (25 U.S.C. § 1901(4).) She is the child of unwed parents, one of whom happens to be of Indian heritage. The Indian birth mother was removed from the tribal village and adopted by non-Indian parents years before enactment of the ICWA. Whether her adoption fell into the category of abuses which led to enactment of the ICWA is not pertinent now.
The Native Village of Akhiok has no authority to question the placement of Baby Girl A. under federal law, given the circumstances of this case. The tribe should not be permitted to further delay the child's adoption by additional litigation. Joan A. was properly advised by the trial court and voluntarily elected to relinquish her daughter more than 10 days after her birth. That should be the end of the matter. What is to be accomplished by *1626 the majority's remand is a mystery to me and will undoubtedly leave the parties and the trial court wondering just what they are supposed to do now. I would affirm.
Respondent's petition for review by the Supreme Court was denied October 3, 1991. Mosk, J., was of the opinion that the petition should be granted.
NOTES
[*] Pursuant to California Rules of Court, rule 976(b), part I of the Discussion is not published, because it does not meet the standards for publication.
[1] All statutory references are to title 25 of the United States Code unless otherwise specified.
[2] The parties inform us the British Columbia Supreme Court is a trial court equivalent to the superior court in California.
[3] The notice of motion also stated respondent was seeking reconsideration of the court's finding minor was an Indian child. However, respondent presented no argument or authority on this issue and has not appealed the lower court's finding.
[*] See footnote, ante, page 1611.
[6] The dissent argues this case involves an action to terminate respondent's parental rights. (§ 1903(1)(ii).) Consequently, he concludes appellant has standing to intervene under the ICWA to challenge the validity of respondent's consent to an adoption (§§ 1911(c), 1914), but the Act's placement preferences (§ 1915) do not apply. First, section 1903(1)(ii) applies only to actions "resulting in the termination of the parent-child relationship." (Italics added.) At the completion of these proceedings respondent will still be the minor's mother. That relationship will not terminate until a court grants the prospective adoptive parents' petition for adoption.

Second, although criticizing our characterization of the case as one ancillary to a voluntary adoption, the dissent concedes the present action is only "the first step toward the termination of [respondent's] parental rights" and is intended "to facilitate an adoption." (See dis. opn., post, p. 1622.) Finally, reliance on Matter of Adoption of Baby Boy L. (1982) 231 Kan. 199 [643 P.2d 168] is without merit since, as the dissent notes, that case involved an involuntary proceeding to terminate the father's parental rights. (See dis. opn., post, p. 1624.)
[7] In light of our foregoing discussion we need not consider appellant's contention the motion for reconsideration failed to satisfy Code of Civil Procedure section 1008, subdivision (a)'s requirement that it be "based upon an alleged different state of facts."
[1] Having said that, I hasten to add that any victory for the tribe under section 1911(c) is somewhat Pyrrhic. An Indian tribe can exercise its right of intervention only if it has notice of a pending action. The act does not require notice of a birth parent's intention to voluntarily consent to an adoptive placement (25 U.S.C. § 1913); but the tribe may intervene nonetheless, although its role is severely limited in scope (25 U.S.C. § 1914). More of that anon.
[2] That section is titled, "Parental rights, voluntary termination."
[3] Clearly, federal law is at pains to protect the rights of Indians in these matters. The contrast between the federal statute and state law is striking. Under California's adoption scheme, the court does not become involved until it is time to enter a decree of adoption or until a birth mother wishes to withdraw her consent. A birth mother residing in this state signs a consent for adoption "`in the presence of a representative of the Department of Social Services,'" not a judge. (In re Baby Boy M. (1990) 221 Cal. App.3d 475, 478 [272 Cal. Rptr. 27].) Once consent is given, the birth mother no longer has the absolute right to reverse her decision. Her consent may be withdrawn only with the approval of the court upon a finding that it is in "the best interests of the child." (Civ. Code, § 226a, eff. July 1, 1991; see Civ. Code, § 224.64.) No state statute permits withdrawal of consent postadoption.
[4] Section 1911(a) pertains to child custody proceedings "involving an Indian child who resides or is domiciled within the reservation of such tribe...." For an Indian child not residing on a reservation, section 1911(b) provides for transfer of a state court proceeding to the tribe's jurisdiction unless a parent objects or there is "good cause to the contrary." Joan A.'s objection has been strenuous and consistent; accordingly, that subdivision is not in issue.

All public records, acts, and judicial proceedings of Indian tribes are to be accorded full faith and credit. (§ 1911(d).) No one has challenged the validity of the tribe's acceptance of Baby Girl A. as a member, so that subdivision is not a concern. Neither is 25 United States Code section 1912, which pertains to involuntary proceedings for termination of parental rights or placement of Indian children in foster care.
[5] This probably explains why Congress did not require notice to the tribe in proceedings such as this. (25 U.S.C. § 1913.) Court approval of a nonreservation mother's consent to terminate her rights was probably viewed as an adequate safeguard in most cases. Still, out of an abundance of caution, tribes were given the right to assert a parent's rights when a state court has not obtained a valid consent under the ICWA.