[No. G010165. Fourth Dist., Div. Three. Oct. 18, 1991.]

In re RIVA M. et al., Minors.
ORANGE COUNTY SOCIAL SERVICES AGENCY, Petitioner and
Respondent, v.
LORENZO M., SR., Objector and Appellant..

**[Opinion certified for partial publication.\*]**

*Pursuant to California Rules of Court, rule 976(b), parts III and IV of the opinion are not
published because they do not meet the standards for publication.

COUNSEL

Paoli & Paoli and Sylvia L. Paoli, under appointment by the Court of Appeal, for Objector and Appellant.

Terry C. Andrus, County Counsel, Christopher J. Miller, Deputy County Counsel, for Plaintiff and Respondent.

Harold LaFlamme and Duane T. Neary, under appointments by the Court of Appeal, for the Minors.

## OPINION

**WALLIN, J.**—Lorenzo M., Sr. (Lorenzo) appeals the judgment terminating his parental rights to Riva M., Robert M. and Lorenzo M. (Lorenzo, Jr.) pursuant to Civil Code section 232, contending: (1) the trial court erred by failing to adhere to the provisions of the Indian Child Welfare Act (ICWA); (2) the court's findings were inadequate to support the judgment; (3) the court prejudiced Lorenzo by failing to bring the matter to trial within a reasonable time; and (4) the court abused its discretion by considering allegations in a dismissed petition. We affirm and publish the discussion of the first two contentions.

Lorenzo is not an American Indian, but Carol C., the mother of Robert, Riva, and Lorenzo, Jr., is a full-blooded Northern Cheyenne. The children are Cheyenne Indians, registered with the tribe. Lorenzo's travail concerning the children began when Carol, pregnant with Lorenzo, Jr., and transient, voluntarily turned Robert and Riva over to the Orange County Social Services Agency (SSA) in May 1987. Petitions under Welfare and Institutions Code section 300 were filed alleging the parents were unable to care for Robert and Riva and asking that they be made wards of the court. When Lorenzo, Jr., was born days later with cocaine in his system, a similar petition was filed as to him, alleging his home was an unfit place.

Lorenzo was in the Orange County jail and continuances were necessary to secure his presence. He and Carol eventually admitted the allegations, and the matter was continued for a dispositional hearing and service plan. At the hearing in September 1987, the children were made wards of the court. The parties stipulated that active efforts to provide services to prevent the breakup of an Indian family had failed and that continued custody by the parents was likely to result in emotional or physical damage. Expert testimony pursuant to the ICWA was waived and the tribe's right to intervene was preserved. The social worker's report stated placement with Lorenzo should be considered if he obtained a suitable place of employment and a legal source of income, entered into an alcohol rehabilitation program, abstained from alcohol while with the minors, and signed necessary releases for monitoring his rehabilitation program. The report was approved by the court and incorporated into its dispositional order.

Subsequent attempts to bring Lorenzo into court for an advisement concerning the potential termination of his parental rights under Civil Code

section 232[2] proved fruitless, apparently because he was not at his last known address. In November a supplemental Welfare and Institutions Code section 300 petition was filed alleging Riva previously had been molested by an unknown male while living at home. A sexual abuse examination had revealed genital trauma.[3] Carol's default was taken on the supplemental petition in December. In July 1988 the petition was dismissed as to Lorenzo.

Lorenzo, Jr.'s foster parents filed a motion for standing which was granted in March 1988. The SSA report at that time indicated Lorenzo was residing in Riverside. He and Carol were willing to relinquish their rights to Lorenzo, Jr., but wanted to regain custody of Robert and Riva. The report suggested the service plan for both parents be modified to provide for counseling and support groups concerning the molestation issue.

In April 1988 the six-month review was held. The court approved the modified service plan and incorporated it into its order. Lorenzo and Carol were told termination of parental rights was possible if the children could not be returned to them by the next review hearing, and admonished to comply with the service plan. A motion of the tribe to transfer jurisdiction as to Lorenzo, Jr., was denied due to an objection by his attorney and the tribe's failure to appear. The SSA report indicated Lorenzo and Carol were unemployed and living in various motels. Carol was pregnant again. Lorenzo said he had completed a drug program, but the caseworker was unable to verify it because Lorenzo did not sign a release for the information.

In August 1988 Lorenzo, Jr.'s foster parents filed a petition to adopt him. In September, a permanency planning hearing was held. The social worker filed a report that detailed Lorenzo's and Carol's progress. They were both unemployed and living in a motel. Their cooperation with the visitation plan had been good, but they were performing unsatisfactorily in the service plan. Lorenzo had attended a number of counseling sessions and was in an alcohol rehabilitation program, but his attendance was not consistent. He was dropped from an Antabuse program for nonattendance and began drinking again. He was drunk once when he visited Robert and Riva, and on one occasion was drunk when he drove them back to the foster home after a visit. He was arrested for drunk driving in August.

Lorenzo and Carol desired placement of Robert and Riva in an Indian home until they could regain custody. The social worker recommended that

[2]The advisement is required by California Rules of Court, rule 1456 (f).

[3]The allegations apparently arose from Riva's complaint after she had been placed in a shelter home that "Daddy and Grandpa scratched my pee-pee and it hurts." Riva reiterated her claim Lorenzo had previously molested her in a March 1988 progress report. An August 1988 report related Carol's 1984 report to the Child Abuse Registry that Lorenzo had sexually fondled Riva during her infancy.

Lorenzo, Jr., be freed from parental custody for adoption and that Robert and Riva remain in placement while attempts were made to reunite them with Lorenzo and Carol. The parties stipulated to this recommendation and it became the order of the court. The tribe decided not to intervene.

In November and December 1988, supplemental permanency planning reports were filed, recommending the institution of proceedings to terminate parental rights. The new recommendation was based upon Lorenzo's termination from his alcohol rehabilitation program and failure to enter a recommended inpatient program, and his arrest and six-month sentence for being under the influence of drugs. Carol had been arrested for petty theft, failed to visit Robert and Riva, and was no longer complying with the service plan.

A contested permanency planning hearing concerning Robert and Riva was held, after several continuances, in March 1989. In the meantime, Carol's default was entered. At the hearing, the social worker testified Lorenzo was not in compliance with the service plan, it would be detrimental to place the children with him, there was no substantial probability of reunification within six months, and the children were adoptable. Lorenzo admitted he was, at best, in partial compliance with the service plan, and that he had not seen his children in about six months. The court considered the testimony and various SSA reports, and found, by clear and convincing evidence, there was no substantial compliance with the plan, it would be detrimental to return the children to him, the children were adoptable, and proceedings should be instituted pursuant to Civil Code section 232. The tribe indicated it agreed to the proposed adoptions of Robert and Riva.

By this time, SSA had filed a petition pursuant to Civil Code section 232 to free Lorenzo, Jr., from parental control. Based upon a stipulation by all parties, the court ruled the placement and permanent plan orders recommending Lorenzo, Jr's adoption were appropriate and continued the matter for a periodic review. A similar petition was filed as to Robert and Riva in November. Notices of intent to terminate parental rights and of the right to intervene were sent to the tribe in both matters.

The matter was set for contested hearing in February 1990 but was continued on several occasions until October, primarily because Lorenzo had been sent to prison and required transportation. Carol did not appear at the February hearing and her rights were terminated. The tribe was given notice of these actions.

Lorenzo was paroled in July and attended the October hearing regarding termination of parental rights. He had not seen or supported the children for

two years. The court terminated Lorenzo's parental rights finding, by clear and convincing evidence, that they came within Civil Code section 232, no less detrimental alternatives existed, and termination was in their best interests.

I

Lorenzo contends the trial court violated ICWA by failing to make the required findings using the beyond-a-reasonable-doubt standard of proof and to require expert testimony. SSA argues that Lorenzo lacks standing to pursue the ICWA claim and that he waived the issue by failing to raise it in the trial court.

The ICWA (25 U.S.C. §§ 1901-1963) was enacted for " 'the protection of the best interests of Indian children, and the promotion of stable and secure Indian tribal entities. [Citation.]' " (*In re Crystal K.* (1990) 226 Cal.App.3d 655, 661 [276 Cal.Rptr. 619].) In enacting the legislation Congress declared that "it is the policy of this Nation to protect the best interests of Indian children and to promote the stability and security of Indian tribes and families by the establishment of minimum Federal standards for the removal of Indian children from their families and the placement of such children in foster or adoptive homes which will reflect the unique values of Indian culture, and by providing for assistance to Indian tribes in the operation of child and family service programs." (25 U.S.C. § 1902.)

To accomplish these goals the ICWA grants a tribe exclusive jurisdiction over child custody proceedings involving children residing on the reservation. Concerning certain involuntary actions involving children living off the reservation, a tribe has the right to intervene in those actions or a qualified right to transfer them to its jurisdiction. (25 U.S.C. § 1911; *In re Baby Girl A.* (1991) 230 Cal.App.3d 1611, 1616 [282 Cal.Rptr. 105].) Although SSA discusses intervention in depth in its brief, it is not the issue here.

In addition, section 1912(f) of the ICWA provides, "No termination of parental rights may be ordered in such proceeding in the absence of a determination, supported by evidence beyond a reasonable doubt, including testimony of qualified expert witnesses, that the continued custody of the child by the parent or Indian custodian is likely to result in serious emotional or physical damage to the child." The section applies to involuntary state proceedings for foster care or termination of parental rights where "the court knows or has reason to know that an Indian child is involved . . . ." (25 U.S.C. § 1912(a).) This is so even when the tribe decides not to intervene.

No party here ever disputed that Indian children were involved. The trial court had to find a likelihood of substantial emotional or physical damage, using the beyond-a-reasonable-doubt standard. It made the requisite finding by concluding, "[R]eturn of the [children] . . . to the father would be detrimental . . . ." The detriment pursuant to Civil Code section 232, subdivision (a)(7) is a substantial detriment. (See *In re Jack H.* (1980) 106 Cal.App.3d 257, 268 [282 Cal.Rptr. 105].) And, the trial court's oral statements at the time of its decision adequately substantiated the finding of serious detriment. (See *In re Richard E.* (1978) 21 Cal.3d 349, 356-357 [146 Cal.Rptr. 604, 579 P.2d 495].)

In making its findings the court referred to the "problems which led to . . . loss of custody." Lorenzo had previously stipulated that those problems —primarily his drinking, incarceration, and lack of stable employment and residence—were a threat to the physical and emotional well being of the children. The court's finding that he had failed to overcome those problems was tantamount to finding a danger of serious emotional or physical damage as required by section 1912(f).[4]

However, there was no expert testimony,[5] nor was the beyond-a-reasonable-doubt standard used in making the determination. Unless the errors were waived or harmless, reversal is required.[6]

By failing to object, Lorenzo waived any error in using the clear and convincing evidence standard of proof and failing to require expert testimony. As a general rule, a party is precluded from urging on appeal

[4]At oral argument Lorenzo's counsel commented that potential serious harm could be shown if the parents were not taking care of the children. That is precisely the scenario presented. Carol turned Riva and Robert over to SSA because she could not care for them. Lorenzo could not do so because he was in jail. Lorenzo, Jr., was born a few days later with cocaine in his system. Nothing in the record shows that during the ensuing three years, Carol and Lorenzo ever had sufficient funds or an adequate abode to properly care for the children. While poverty alone would not justify Lorenzo's and Carol's loss of their children, the record shows their dilemma was the product of drug and alcohol problems with which they could not or would not deal.

[5]Although expressed in the plural, the statute only requires one expert witness. (*D.A.W.* v. *State* (Alaska 1985) 699 P.2d 340.) When cultural bias is clearly not indicated, the expert need not possess special knowledge of Indian life. (*State* ex rel. *Juvenile Dept. of Lane County* v. *Tucker* (1985) 76 Ore.App. 673 [710 P.2d 793].) Here, a social worker testified at the termination hearing, but not as to detriment.

[6]SSA claims Lorenzo does not have standing. But in ICWA proceedings, "parent" means "any biological parent . . . of an Indian child . . . ." (25 U.S.C. § 1903(9).) Section 1912 requires that "the parent" be notified of the proceedings to which the section applies, and section 1914 allows "any parent" to petition to invalidate a termination of parental rights in proceedings which did not comply with the provisions of section 1912. (25 U.S.C. §§ 1912, 1914.) Lorenzo has standing.

any point not raised in the trial court. (*Parker* v. *City of Fountain Valley* (1981) 127 Cal.App.3d 99, 117 [179 Cal.Rptr. 351].) Any other rule would " ' "permit a party to play fast and loose with the administration of justice by deliberately standing by without making an objection of which he is aware and thereby permitting the proceedings to go to a conclusion which he may acquiesce in, if favorable, and which he may avoid, if not." ' [Citations.]" (*In re Christian J.* (1984) 155 Cal.App.3d 276, 279 [202 Cal.Rptr. 54].)

■ A major exception is when the error involves the fundamental jurisdiction of the court to act. (*In re Christian J.*, *supra*, 155 Cal.App.3d 276, 279.) The standard of proof and requirement of expert testimony imposed by the ICWA are not such matters. They are included in a statutory scheme created to protect Indian families. While the act's goals are laudable, there is no hint from the statutory language or cases construing it that the procedural standards are constitutionally compelled. (Compare *People* v. *Belton* (1979) 23 Cal.3d 516, 520 [153 Cal.Rptr. 195, 591 P.2d 485] [beyond-a-reasonable-doubt standard is constitutionally compelled in criminal cases].)[7]

It would be especially unfair to ignore the waiver rule here. Throughout the proceedings the parties, including Lorenzo, were aware that the children were Cheyenne Indians, that the tribe had some interest in the matter, and that the ICWA might apply. At the dispositional hearing in September 1987, they stipulated to requisite findings and waived expert testimony to comply with the ICWA. By the time of the hearing pursuant to Civil Code section 232, the tribe and Carol, the Indian mother, had chosen not to contest the termination of rights. Lorenzo, who is not an American Indian, said nothing about the applicability of the ICWA. Although he had expressed a desire at one time to have Robert and Riva placed in an Indian foster home, he did not raise the issue at the hearing. We can only presume he did not care whether the ICWA standards were applied, or was attempting to sandbag the issue for appeal. Neither of those reasons merits our consideration of an issue not raised in the trial court.[8]

In any event, any error was harmless. Because the issue is not one of constitutional dimension, the question is whether there is a reasonable

---

[7]Another exception to the rule requiring an objection to preserve an issue for appeal concerns the failure of the trial court to give adequate instructions on the applicable law, including the burden of proof. (*Roberts* v. *City of Los Angeles* (1980) 109 Cal.App.3d 625, 632 [167 Cal.Rptr. 320]; *Bruck* v. *Adams* (1968) 259 Cal.App.2d 585, 588 [66 Cal.Rptr. 395].) Since the error here did not involve an instruction, that exception is likewise inapplicable.

[8]For the same reasons, had we not found an adequate finding of detriment to the children, we would hold that Lorenzo waived that finding.

probability the outcome would have differed in the absence of the procedural irregularity. (Cal. Const., art. VI, § 13; compare *Deeter* v. *Angus* (1986) 179 Cal.App.3d 241, 251 [224 Cal.Rptr. 801] [denial of due process is reversible per se].)[9] It would not.

The evidence was overwhelming that rehabilitation and reunification efforts had failed, and that placement of the children with Lorenzo would be seriously detrimental, physically and mentally. The evidence supports the requisite findings beyond a reasonable doubt, even without the testimony of an expert witness.[10]

## II

Lorenzo asserts the trial court's findings were inadequate to support the judgment. Specifically, he contends he was not offered adequate reunification services, there was insufficient evidence to support the court's finding of detriment to the children,[11] and the court did not adequately consider less drastic alternatives to termination of parental rights.[12] None of these assertions has merit.

It is nonsense to argue Lorenzo was not offered adequate re-unification services. Although he was not made a major part of the original reunification plan—probably due to his incarceration—an addendum for the

---

[9]The court in *In re Crystal K.*, *supra*, 226 Cal.App.3d 655 found the trial court erred in not applying the ICWA and remanded the case for proceedings comporting with 25 United States Code section 1912. (226 Cal.App.3d at p. 668.) However, the court never considered what standard of scrutiny should be applied to the error.

[10]Another way to view the prejudice test yields the same result. Given the facts that neither Carol nor the tribe desired custody of the children and Lorenzo was not an American Indian, the "Indian family" would have been rent asunder in any event. The purpose of the ICWA, to preserve Indian families, could not be implemented. At best, Lorenzo, a non-Indian, would have not lost all parental rights and may have gained custody of the children some day. We are not aware of any case finding a prejudicial failure to apply the ICWA where the appellant's position, if adopted, would not maintain some contact between the Indian child and the Indian culture. (See *In re Crystal K.*, *supra*, 226 Cal.App.3d 655, 663-666 and cases cited.)

[11]SSA urges that this argument relates to findings at the permanency planning hearing, and is not appealable. (See Welf. & Inst. Code, § 366.25, subd. (j); *In re Kristin W.* (1990) 222 Cal.App.3d 234, 245 [271 Cal.Rptr. 629].) Although this supposition is reasonable based upon language in Lorenzo's opening brief, we read the crux of his argument to relate to the sufficiency of the evidence to support the decision to terminate parental rights.

[12]The first two claims are based upon requirements contained in Civil Code section 232, subdivision (a)(7), which states in part: "The court shall make a determination that reasonable services have been provided or offered to the parents which were designed to aid the parents to overcome the problems which led to the deprivation or continued loss of custody and that despite the availability of these services, return of the child to the parents would be detrimental to the child." The last claim is based upon a decisional prerequisite to termination of parental rights. (*In re Heidi T.* (1978) 87 Cal.App.3d 864, 874 [151 Cal.Rptr. 263].)

September 1987 disposition hearing stated service plan requirements for him, if he were interested in regaining custody. They included maintaining a suitable residence and source of income, and a program of alcohol rehabilitation with releases of information to SSA to monitor compliance. In March 1988 an amended plan was instituted which required parenting and counseling classes for both parents. These services were apparently arranged and the social worker gave the parents bus passes to attend meetings. The worker had multiple contacts with both of them between April and September 1988. Subsequently contacts lessened due to Lorenzo's failure to keep SSA informed of his whereabouts and his incarceration.

Lorenzo claims he merely was given a list of " 'dos' and 'don'ts' . . . with practically no actual efforts by the social workers to help him succeed." Short of accompanying Lorenzo 24 hours a day to ensure that he worked, attended the requisite programs, and did not drink, we fail to see what the caseworkers might have done to ensure compliance with a plan which directly addressed the dysfunctional aspects of this family. It is the job of SSA to assist parents with inadequate parenting skills in remedying the sources of the problem, not to eradicate the problem itself. Cases where no, or an inadequate, plan was provided are distinguishable. (*In re Victoria M.* (1989) 207 Cal.App.3d 1317, 1328-1330 [255 Cal.Rptr. 498] [specialized services available for mentally retarded woman were not provided]; *In re Michael S.* (1987) 188 Cal.App.3d 1448, 1457, 1463-1464, 1468 [234 Cal.Rptr. 84] [court failed to modify plan where mother was performing well on prior plan]; *In re John B.* (1984) 159 Cal.App.3d 268, 273 [205 Cal.Rptr. 321] [no plan ordered].)

Lorenzo's appellate counsel asks us to state a "bright line" definition of an adequate service plan. No workable rule could be as "bright" as counsel might like it. A proper service plan must be tailored to the specific needs of the dysfunctional family. However, to make the requisite findings, the record should show that the supervising agency identified the problems leading to the loss of custody, offered services designed to remedy those problems, maintained *reasonable* contact with the parents during the course of the service plan, and made *reasonable* efforts to assist the parents in areas where compliance proved difficult (such as helping to provide transportation and offering more intensive rehabilitation services where others have failed).

Those criteria easily were met here. Before Lorenzo's "nosedive" in the fall of 1988, SSA recommended continued efforts to achieve reunification, even though Lorenzo's compliance was marginal. SSA gave him credit for satisfactory performance when it was due. There is not a hint that SSA acted in bad faith or put forth less than its best efforts to reunite the family.

■ The record also supports the finding that return of the children to Lorenzo would be detrimental. He failed egregiously in his attempt to remedy the causes of the detriment. Although Lorenzo never signed the plan, he knew about it. For approximately five months he made *some* effort at compliance. He attended some of the parenting classes and participated in an alcohol rehabilitation program, but was unemployed and living at various motels.[13]

By September Lorenzo had been dropped from an Antabuse program for nonattendance and admitted to drinking again. He was drunk once when he visited Robert and Riva, and drove them back to the foster home while drunk once after a visit. He was arrested for drunk driving in August. Eventually, he was terminated from his rehabilitation program, failed to enter a recommended inpatient program, and was arrested for being under the influence of drugs and jailed for six months.

Contrary to Lorenzo's contention, *In re Mary M.* (1986) 180 Cal.App.3d 1058 [226 Cal.Rptr. 5] is very much on point. There, the court found substantial evidence to support the termination of parental rights pursuant to Civil Code section 232, subdivision (a)(7) where the father had a severe alcohol problem for which he refused help and the mother was totally incapable of parenting. (*Id.* at pp. 1062, 1064-1066.) The major difference here is that Lorenzo tried and failed in a rehabilitation program before he apparently gave up and refused to enter an inpatient program. The end result was the same, except that Lorenzo's problem with alcohol and drugs landed him in jail and prison where he was not available to parent at all.[14] Lorenzo's failure to complete the court ordered service plan within 18 months created a presumption of detriment to the children. (Welf. & Inst. Code, § 366.22, subd. (a).) The evidence of his conduct did nothing to rebut that presumption.

■ Lorenzo's claim that the record does not support a finding of unavailability of less drastic alternatives also lacks merit. The "alternatives" Lorenzo suggests are ones without factual support in the record. (*In re*

---

[13]Lorenzo stresses that an SSA report relates that he *told* the worker he completed an alcohol program. However, the case worker was unable to verify it because Lorenzo did not sign a release for the information.

[14]We take care to distinguish Lorenzo's situation from that of the mother in *In re T.M.R.* (1974) 41 Cal.App.3d 694 [116 Cal.Rptr. 292], whose abandonment of her child was based solely upon her incarceration. (*Id.* at p. 702.) Lorenzo's incarcerations arose *after* the court proceedings had been commenced and were a product of his inability to deal with his substance abuse problem. Contrary to his characterization of the incarcerations, they were not merely unfortunate circumstances beyond his control. They followed his failure to enter the recommended residential treatment program, and rendered him "unavailable" to participate in the service plan for approximately 14 of the 24 months preceding the final hearing.

*Terry E.* (1986) 180 Cal.App.3d 932 [225 Cal.Rptr. 803] [temporary placement with a relative]; *In re Jack H.* (1980) 106 Cal.App.3d 257, 270 [165 Cal.Rptr. 646] [continued foster care with visitation rights]; *In re Jeannette S.* (1979) 94 Cal.App.3d 52, 60 [156 Cal.Rptr. 262] [placement with father under strict supervision].) There is no indication a relative was willing or able to take custody of the children and placing them with Lorenzo would have been utterly irresponsible.

Whether to continue with the status quo with increased visitation was within the discretion of the trial court. (*In re Raymond H.* (1985) 175 Cal.App.3d 556, 563 [221 Cal.Rptr. 165].) By the time the termination issue was heard, Lorenzo had been given three years to correct his life-style. The prognosis for change within the foreseeable future was grim at best, and prolonging the termination decision would have exacerbated any detriment to the children.

### III, IV*

. . . . . . . . . . . . . . . . . . . . . . . . . . .

The judgment is affirmed.

Sills, P. J., and Moore, J., concurred.

Appellant's petition for review by the Supreme Court was denied February 20, 1992.

---

*See footnote, *ante*, page 403.