Filed 1/3/25  M.P. v. Superior Court CA5

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

# FIFTH APPELLATE DISTRICT

| | |
|---|---|
| M.P.,<br><br>Petitioner,<br><br>v.<br><br>THE SUPERIOR COURT OF KERN COUNTY,<br><br>Respondent;<br><br>KERN COUNTY DEPARTMENT OF HUMAN SERVICES,<br><br>Real Party in Interest. | F088784<br><br>(Super. Ct. Nos. JD144913-00,<br>JD144914-00, JD144915-00)<br><br>**OPINION** |

## THE COURT[*]

ORIGINAL PROCEEDINGS; petition for extraordinary writ.  Susan M. Gill, Judge.

Law Office of Stephen J. Adelson and Stephen J. Adelson for Petitioner.

No appearance for Respondent.

Margo A. Raison, County Counsel, and Kelli R. Falk, Deputy County Counsel, for Real Party in Interest.

---

[*]     Before Franson, Acting P. J., Meehan, J. and De Santos, J.

Petitioner M.P. (mother) seeks extraordinary writ relief following the juvenile court's October 14, 2024 order setting a Welfare and Institutions Code section 366.26 hearing.[1]  Mother contends the juvenile court erred in terminating reunification services as it had not ordered reunification services once mother's whereabouts became known, and asks for a stay of the upcoming section 366.26 hearing on February 10, 2025.  We deny the petition and request for stay.

## FACTUAL AND PROCEDURAL HISTORY

The children A.A., W.A., and J.A., (then ages seven years, one year, and 10 months old) were placed into protective custody on August 10, 2023, due to domestic violence between mother and father and mother's drug use.  Mother had been receiving voluntary family maintenance services since June of 2023.

At the detention hearing on August 14, 2023, the juvenile court ordered the children detained and the hearing continued at parent's counsel's request; mother and father were not present.  Mother and father were again not present at the continued hearing the following day.  The children were detained and a jurisdiction/disposition hearing set for October 5, 2023.

The Kern County Department of Social Services (department) had sporadic contact with mother and father.  A social worker went over a case plan with mother on September 19, 2023, advising mother of the plan's counseling components and directing her to counseling providers.  The department requested that mother drug test, but she declined, indicating she had used fentanyl three to four days prior.  Mother was advised that the children were placed with maternal grandmother, and she was told of the October 5, 2023, court hearing.

---

[1]     All further statutory refences are to the Welfare and Institutions Code unless otherwise stated.

2.

The jurisdiction/disposition hearing was held October 5, 2023. Neither mother nor father were present and counsel for both requested a continuance due to a late report, which was granted and a hearing set for December 5, 2023.

The disposition report filed for the December 5, 2023 hearing indicated that the social worker had contact with mother on October 13, 2023. At the time, mother's family was trying to get her into a treatment facility. The department continued to try to contact mother after October 13, 2023, but was unsuccessful. Mother had not visited the children since August 30, 2023, and she had not enrolled in any of her case plan components. The children were moved to a maternal aunt's home on November 22, 2023. The department recommended family reunification services for mother for a period of six months, consisting of counseling for substance abuse, parenting and neglect, and domestic violence as a victim. It further recommended mother submit to random, unannounced drug testing on at least a monthly basis.

Neither mother nor father were present at the jurisdiction hearing December 5, 2023. Counsel for mother and father objected with no further evidence. The juvenile court found proper notice had been given and found the allegation of the petition true.

The disposition hearing was continued to February 2, 2024, at the department's request, due to Indian Child Welfare Act compliance and efforts to locate mother and father. The dispositional hearing was again continued to April 4, 2024, at the request of the department to continue a diligent search of mother and father.

On March 26, 2024, the department filed a declaration of diligent search for mother and father, stating they were unable to locate either. The department filed a supplemental report, recommending that reunification services be bypassed pursuant to section 361.5, subdivision (b)(1)[2], as their whereabouts were unknown and a diligent

---

[2] Section 361.5, subdivision (b)(1) provides that reunification services need not be provided a parent if the whereabouts of a parent is unknown, with proof that a reasonably diligent search has failed to locate the parent.

search was on file. The report indicated that, if the whereabouts of mother and father became known within the following six months, the department was to provide reunification services.

At the April 4, 2024, continued disposition hearing, neither mother nor father were present, but were represented by counsel. The hearing was uncontested. The children were ordered removed from mother and father's custody, and family reunification services were bypassed. A six-month review was scheduled for October 4, 2024.

The department's report filed for the October 4, 2024, review hearing stated that mother had texted the social worker on July 3, 2024, indicating that she wanted to talk. The social worker called mother and attempted to set up a meeting with her. Mother was not home when the social worker attempted to meet mother July 11, and July 23, 2024. The social worker did meet with mother on August 2, 2024, and, at that time, the social worker went over the case plan with mother, enrolled mother in a call-in drug testing system, and set up visitation with the children. Mother was offered a bus pass. Mother was also advised of the October 4, 2024, review hearing and was warned that, if she did not make progress, the children could go to a permanent plan. The social worker texted mother on August 12, 2024, regarding visitation and bus pass, but mother did not respond, and she was not home when the social worker attempted a visit with mother on September 3, 2024.

Mother did submit to a drug test on August 23, 2024, and was positive for amphetamine and methamphetamine. Mother visited the children on August 12th, 16th, 22nd and September 13, 2024. At the visits, mother primarily interacted with the oldest child, and had minimal interaction with the younger two. Mother indicated that she was on a wait list for parent-neglect counseling, but the department did not receive enrollment verification. The department recommended that services be terminated for mother as she had failed to make contact with the department and, once she did, she failed to make significant efforts to reunify with the children.

Mother appeared at the October 4, 2024, hearing and requested a continuance due to a notice issue — the notice sent to mother had mistakenly indicated that the recommendation was to continue services for mother. The hearing was continued to October 14, 2024.

The department filed a supplemental report for the October 14, 2024 hearing documenting its continued efforts to provide services to mother. The social worker met with mother on September 13, 2024, when mother had a visit with the children. At that time, the social worker went over the case plan and requested that mother drug test that day, which she refused. Mother said she was on a waitlist for substance abuse counseling. The social worker attempted to meet with mother on October 10, 2024, but mother said she was unavailable as she said she was going to a softball game.

Mother was present at the October 14, 2024, review hearing. Mother's counsel requested a continuance stating he wanted to review the department's service log, as mother claimed she had had contact with the department throughout the case and that would be documented in the log. The court asked counsel whether "the services and the contacts mother has been provided since July 3rd when she first spoke to the social worker[,] do you think [that] was not the same as reunification services …?" Counsel stated that he was not disputing that, but disputing that the July 3rd date was the first date mother had contact and, if that information was not in the log, he intended to submit by testimonial evidence that mother had contact with the department throughout the case, "including April of this year and December of last year." Mother's counsel argued that, if mother contacted the social worker earlier in 2024, as she claimed, she should have been getting services early in 2024.

Mother's request for a continuance was denied, and mother called the social worker to testify. The social worker testified that she had been assigned the case in April of 2024, had reviewed the entire service log of the case, and did not see any contact with mother between January 1, and July 1, 2024.

5.

Mother testified that she had contact with the department sometime between February and April of 2024. According to mother, her phone was broken and she used a friend's phone to call the department at a number she found on the Internet. Mother testified that she was told she did not have anyone assigned to her case, and she then did not attempt to contact the department again until July 2024. Mother claimed that, since she came in contact with the department, she had not been given a case plan, only some suggestions and papers of parenting and narcotics classes. She claimed she was only told to go to classes "[a]bout two months ago."

Following argument, the juvenile court found mother's testimony not credible. The court noted mother knew her children were in protective custody, but failed to come to court. The court did not believe mother's assertion that she did not know who her social worker was, and she could have contacted her own mother and her sister for that information, if that was the case. The court was skeptical of mother's assertion that she had not been provided services as soon as the department knew where she was. According to the court, the department has "always provided services as soon as the parents have been found. That's certainly the intention, whether the judge says it at dispo or not." Since the case was now at the 12-month date, the juvenile court found no basis to continue reunification services at this point and followed the recommendation of the department to terminate services. The court found that reasonable services had been provided and a section 366.26 hearing was set for February 10, 2025.

## DISCUSSION

Mother claims the court erred by setting a 366.26 hearing as the juvenile court did not order services for her once her whereabouts became known. We agree with the department's assertion that mother's argument is meritless as mother was provided with services once her whereabouts became known and mother conceded this at trial. We agree further that any procedural error in not formally ordering services was harmless.

6.

If the juvenile court denies a parent reunification services under section 361.5, subdivision (b)(2) through (16), the juvenile court is authorized under section 361.5, subdivision (f) to set a section 366.26 hearing. However, if the sole basis of denial of services is the unknown whereabouts of the parent under section 361.5, subdivision (b)(1), the juvenile court must set a six-month review hearing (§ 361.5, subd. (d)).

The underlying intent is to provide a parent whose whereabouts are initially unknown but who desires reunification an opportunity to reunify if the parent's whereabouts become known within a reasonable period. Section 361.5, subdivision (d) provides:

> "If reunification services are not ordered pursuant to paragraph (1) of subdivision (b) and the whereabouts of a parent become known within six months of the out-of-home placement of the child, the court shall order the social worker to provide family reunification services in accordance with this subdivision."

In this case, mother contends, the department never attempted to modify the juvenile court's order denying mother reunification services under section 361.5, subdivision (b)(1), by filing a JV-180 requesting to either order mother services or bypass services for her under one of the other bypass provisions contained in section 361.5, subdivision (b)(2)-(16). Despite this failure, mother argues, the department recommended that the court find, among other things, that mother had made minimal efforts and minimal progress and that the department complied with the case plan. The juvenile court then terminated mother's services and set a permanency planning hearing pursuant to section 366.26. Thus, as argued by mother, the juvenile court terminated mother's family reunification services without ever having ordered her to be provided services.

As respondent notes, in the department's initial disposition report December 5, 2023, it recommended reunification services be provided mother, and a case plan was

7.

attached. Mother was denied services on April 4, 2024, pursuant to section 361.5, subdivision (b)(1), when her whereabouts were unknown. The supplemental report filed for the April 4, 2024, hearing indicated that, if mother's whereabouts became known, she would be provided services.

When mother did finally contact the department in July of 2024, the department immediately provided mother reunification services. Mother asserts that the department had a duty to seek a modification of the disposition order once mother came forward, but provides no authority for this assertion. Section 361.5, subdivision (d) only provides that if the parent is denied services pursuant to section 361.5, subdivision (b)(1), and the parent's whereabouts become known within six months, the court shall order the social worker to provide reunification services. While there was no separate hearing after mother came forward in July 2024 to specifically order reunification services, the issue of offering mother services once her whereabouts became known was addressed in the supplemental disposition report. And, as the juvenile court noted at the section 366.26 hearing, it was the regular practice of the department that services were always provided once the parents come forward, whether it was specifically ordered at the disposition or not.

The proposed case plan had been on file with the court since the time of the disposition hearing in December of 2023. Although Mother did not show up to any court hearings until October 4, 2024, mother was represented by counsel at each hearing. Counsel had ample opportunity to address the proposed case plan and challenge the formal denial of services, but did not. Further, mother's counsel conceded at the section 366.26 hearing that mother was provided with reunification services once she contacted the department and her whereabouts became known.

Mother argues that the failure to order services will limit the court in its selection of its permanent plan. Not so. The court denied services to the mother because her whereabouts were unknown. Once mother came forward, she was provided with

reunification services.  The court found the department provided reasonable services to mother, that mother failed to participate regularly and make substantive progress, and ordered reunification services terminated.  These orders are unchallenged.

In any event, even if the juvenile court was required to formally order services for mother, any failure to do so was harmless error.  The harmless error analysis applies in juvenile dependency proceedings even where the error is of constitutional dimension.  (*In re J.P.* (2017) 15 Cal.App.5th 789, 798.)  As stated by the court in *In re Riva M.* (1991) 235 Cal.App.3d 403, 412-413, "[b]ecause the issue is not one of constitutional dimension, the question is whether there is a reasonable probability the outcome would have differed in the absence of the procedural irregularity."

The California Supreme Court has summarized the harmless error rule as follows:

> "We typically apply a harmless-error analysis when a statutory mandate is disobeyed, except in a narrow category of circumstances when we deem the error reversible per se. This practice derives from article VI, section 13 of the California Constitution, which provides: "No judgment shall be set aside, or new trial granted, in any cause … for any error as to any matter of procedure, unless, after an examination of the entire cause, including the evidence, the court shall be of the opinion that the error complained of has resulted in a miscarriage of justice."  (*In re Jesusa V.* (2004) 32 Cal.4th 588, 624.)

Here, any error in not formally ordering reunification services for mother made no difference in the outcome of the case. Once mother contacted the department, the social worker met with mother and went over the counseling components, provided a resource directory, enrolled mother on the call-in system to test, and set up visits for mother with her children. Mother enrolled in the case plan due to her contact with the social worker. Unfortunately, mother waited to contact the department until very late in the reunification period, leaving little time for mother to make progress.  The juvenile court holding a separate hearing to order services at this point in the case would have made no difference.

## DISPOSITION

The petition for extraordinary writ is denied, as is mother's request for a temporary stay of the February 10, 2025 hearing.