Filed 11/18/21  In re B.D. CA2/2
# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| In re B.D. et al., Persons Coming Under the Juvenile Court Law. | B311000 (Los Angeles County Super. Ct. No. 20CCJP01715 A & B) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, Plaintiff and Respondent, v. E. D., Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Annabelle G. Cortez, Judge.  Affirmed.

Linda J. Vogel, under appointment by the Court of Appeal, for Defendant and Appellant.

Rodrigo A. Castro-Silva, County Counsel, Kim Nemoy, Assistant County Counsel, and Melania Vartanian, Deputy County Counsel, for Plaintiff and Respondent.

\* \* \* \* \* \*

E.D. (mother) appeals the finding of the juvenile court that the Los Angeles Department of Children and Family Services (the Department) made reasonable efforts to provide her reunification services during the first six months after her two children were removed from her custody as dependents of the juvenile court.  Because the court's finding was supported by substantial evidence, we affirm.

## FACTS AND PROCEDURAL BACKGROUND

### I.    Facts

Mother and Martin W. (father) have two sons—B.D. (born September 2017) and K.D. (born July 2019).

In late February 2020, mother left B.D. in the care of her sister and her sister's friend; while under their care, B.D. fell into an ungated swimming pool.  Although B.D. was floating in the pool, unconscious, when the sister and friend discovered him, they managed to revive him.  Both mother's sister and the friend were under the influence of marijuana.  Mother was upstairs napping the whole time.  Mother and father later admitted to using marijuana, and marijuana paraphernalia was strewn

2

across the home where mother, her sister, father, and two of father's friends all lived.[1]

## II.    Procedural Background

In late March 2020, the Department filed a petition asking the juvenile court to exert dependency jurisdiction over B.D. and K.D. on eight different grounds.  In August 2020, mother entered a no contest plea agreeing that dependency jurisdiction was appropriate because (1) mother allowed her sister and the friend, both "known abusers of marijuana[,] to supervise [B.D.] while under the influence of marijuana," (2) mother is a "current abuser of marijuana," (3) father is a "current abuser of marijuana," and (4) mother "has mental and emotional problems including anxiety which renders [her] incapable of providing the children appropriate parental care and supervision."[2]  Mother agreed that each allegation places the children at substantial risk of serious physical harm, thereby warranting the exercise of dependency jurisdiction under subdivision (b) of Welfare and Institutions Code section 300.[3]  The juvenile court removed the children from mother and father, and ordered the Department to provide mother with the following reunification services as part of her case plan: (1) drug and alcohol services, including (a) a full drug

---

[1]    These facts are taken from our prior, unpublished opinion in *B.D. v. Martin W.* (Mar. 11, 2021, B307250).

[2]    The juvenile court dismissed the remaining four grounds alleged in support of jurisdiction.  The Department also alleged that jurisdiction was appropriate due to father's conduct, but because father is not a party to this appeal, we do not discuss him further.

[3]    All further statutory references are to the Welfare and Institutions Code unless otherwise indicated.

3

and alcohol program with aftercare, (b) random and on-demand drug testing, and (c) a 12-step program; (2) individual counseling to address her case issues and parenting; and (3) monitored visitation. The court set a six-month review hearing for February 2021.

Over the next six months, mother had in-person visits with the children three times a week through December 2020, when mother asked for the visits to become "virtual" to protect the children from exposure during the fall 2020/winter 2021 COVID "surge." Mother also enrolled in and attended five individual counseling sessions. And mother participated in random drug testing, but was still testing positive for marijuana, albeit at decreasing levels. By the end of the six-month period, mother had not yet enrolled in a full drug and alcohol program or started a 12-step program.

The juvenile court held its six-month review hearing on February 8, 2021. The Department filed a report before the hearing outlining the above facts and indicating that it made "monthly face to face contact with the children" and "[m]ade efforts to make monthly face to face and telephone contact with mother." The Department concluded that mother was in "partial compliance" with her case plan.

At the hearing held on February 8, 2021, mother argued that the Department had *not* made reasonable efforts to provide mother with reunification services because (1) the Department's report did not expressly state that it gave mother any referrals for services, (2) the Department's service logs did not document any contact with mother in November 2020, December 2020, or January 2021, and (3) the Department did not meet every month with mother. The juvenile court rejected mother's argument,

4

finding "by clear and convincing evidence that the Department has complied with the case plan in making reasonable efforts" to provide reunification services.  The court found mother to be in partial compliance with her case plan, commended mother on her progress, ordered another six months of reunification services for mother, and set a 12-month status hearing for May 2021.

Mother filed this timely appeal.

**DISCUSSION**

Mother argues that the juvenile court erred in finding that the Department had made reasonable efforts to provide her with reunification services during the first six months after the children were removed from her custody.

As a threshold matter, we note that our standard of review is unclear.  To be sure, it is clear that we are to review a juvenile court's reasonable efforts finding for substantial evidence.  (*T.J. v. Superior Court* (2018) 21 Cal.App.5th 1229, 1238 (*T.J.*).)  This means we view the record in the light most favorable to the juvenile court's finding, which includes drawing all reasonable inferences in favor of that finding.  (*In re Misako R.* (1991) 2 Cal.App.4th 538, 545; *In re Monica C.* (1994) 31 Cal.App.4th 296, 306 (*Monica C.*).)  What is unclear is whether the juvenile court must make its reasonable efforts finding by clear and convincing evidence or by a preponderance of the evidence.  This matters because the applicable standard of proof affects our substantial evidence review.  (*In re V.L.* (2020) 54 Cal.App.5th 147, 155.)  On the one hand, many opinions have used language suggesting that a reasonable efforts finding must always be made by clear and convincing evidence.  (E.g., *Katie V. v. Superior Court* (2005) 130 Cal.App.4th 586, 594; *In re Precious J.* (1996) 42 Cal.App.4th

1463, 1472-1473; *Monica C.*, at p. 306.)[4]  On the other hand, the pertinent statute requires a reasonable efforts finding at each status review hearing (§ 366.21, subd. (e)(8); *Serena M. v. Superior Court* (2020) 52 Cal.App.5th 659, 674), but only requires that the finding be made by clear and convincing evidence if (1) the period of reunification services offered "has met or exceeded the time period" set forth in section 361.5 and the child is still removed from his parent, and (2) the court orders a permanency planning hearing while a child is still removed from his parent (§ 366.21, subds. (g) & (g)(1)(C)(ii)).  Here, the elevated standard of proof would not seem to apply because (1) the juvenile court finding at issue is from the six-month review hearing and, for children under age three at the time of detention, the time period in section 361.5 is 12 months (§ 361.5, subd. (a)(1)(B)), and (2) the juvenile court did not set a permanency planning hearing.  We will nonetheless sidestep this potential controversy by applying the substantial evidence standard through the prism of a clear and convincing evidence standard of proof.

An agency makes "reasonable efforts" to provide reunification services when it "offer[s] services designed to remedy" the problems identified in the parent's case plan, "maintain[s] *reasonable* contact with the parents during the course of the . . . plan," and makes "*reasonable* efforts to assist the parents in areas where compliance proved difficult."  (*In re Riva M.* (1991) 235 Cal.App.3d 403, 414, italics in original; *In re Dino E.* (1992) 6 Cal.App.4th 1768, 1777.)  "Reasonable" efforts are "good faith" efforts that are "reasonable under the

---

4      Many of these cases cite what appears to be a former version of section 366.21, subdivision (g)(3) in support of their holdings.

circumstances"; to be reasonable, the efforts need not be ideal or perfect. (*Robin V. v. Superior Court* (1995) 33 Cal.App.4th 1158, 1164, 1166 (*Robin V.*); *In re Kristin W.* (1990) 222 Cal.App.3d 234, 254; *T.J.*, *supra*, 21 Cal.App.5th at p. 1240; *Misako R.*, *supra*, 2 Cal.App.4th at p. 547.)

We conclude that substantial evidence supports the juvenile court's finding, by clear and convincing evidence, that the Department made reasonable efforts to provide reunification services. It is undisputed that the Department's efforts resulted in mother having face-to-face visits with the children three times a week until mother asked that the visitations become virtual. Because *the* "key element of reunification" is visitation (*In re Julie M.* (1999) 69 Cal.App.4th 41, 50; *Monica C.*, *supra*, 31 Cal.App.4th at pp. 306-307), the Department's successful efforts in assuring visitation are substantial evidence of its reasonable efforts. What is more, the Department provided mother with the information necessary for her to enroll in—and participate in—individual counseling. The Department also ensured that mother had regular drug tests. The Department also had face-to-face contact with the children every month, and spoke with mother regularly during the six month period regarding the progress she was making on her case plan, including in September 2020, November 2020, and January 2021. To be sure, mother was not able to enroll in the full drug and alcohol program or the 12-step program, but the Department's efforts along every other aspect of mother's case plan constitutes clear and convincing evidence of its reasonable efforts to assist mother in complying with her case plan. What is more, there is no evidence in the record that mother's failure to enroll in the full program or the 12-step program were due to the Department's failings or the COVID-19

7

pandemic rather than mother's decision to focus on certain aspects of her case plan first.  Given the absence of any evidence which suggested that "compliance" with these two aspects of her case plan was "prov[ing] difficult" due to causes external to mother, the Department was not obligated to "ma[k]e reasonable efforts" to overcome those unsubstantiated difficulties.  (*Riva M.*, *supra*, 235 Cal.App.3d at p. 414; cf. *In re Ronell A.* (1996) 44 Cal.App.4th 1352, 1365 [parent's decision not to comply does not mean the Department did not make reasonable efforts].)

Mother responds with what boils down to two arguments.

First, mother argues that the Department did not document precisely what it did to assist mother to enroll in the full drug/alcohol program and the 12-step program; that there is no evidence that the Department provided mother any referrals; and that the Department's "service log" did not show *any* contact between mother and the Department in October 2020, November 2020, or December 2020.  This argument misunderstands the pertinent standard and the standard of review.  Mother urges a "divide and conquer" approach, encouraging us to ignore the Department's efforts with regard to other portions of her case plan (such as visitation, counseling and drug testing), and to focus solely on the aspects of her case plan where the Department's efforts did not bear fruit (such as the full drug/alcohol program and the 12-step program).  If courts reviewing the Department's efforts always focused on where the Department's efforts were unsuccessful, courts would be hard pressed to ever find that the Department's efforts were "reasonable," but that is not the pertinent standard.  Mother's remaining arguments ignore our deferential standard of review.  While the Department did not detail the specific referrals it

provided mother, we can reasonably infer that it was providing referrals because mother enrolled in individual counseling. And although the Department's service log said there were no interactions with mother in October, November and December 2020, other evidence in the record documents the conversations the Department had with mother in October and December 2020; we must resolve this conflict in favor of the juvenile court's finding.

Second, mother urges that the COVID-19 pandemic— rather than constituting a mitigating circumstance to be considered in assessing whether an agency's efforts were reasonable "under the circumstances"—should be viewed as mandating *greater* effort from agencies to ensure that every parent is given the in-person services that might be available. For support, mother cites a bulletin authored by a federal agency opining that the "[l]ack of, or inability to access, treatment or services due to provider closures during the pandemic should not be interpreted as a lack of parental compliance, and might indicate an agency's failure to make reasonable efforts to reunify." We reject mother's argument. The pandemic is to be considered in assessing what efforts are reasonable, but not in a way that *always* places a lesser or greater burden on the Department. Instead, we examine the circumstances and efforts as they apply in each case. Here, as noted above, the Department's efforts were reasonable under the circumstances. The federal agency bulletin adds nothing to our analysis. Although we can take judicial notice that the agency has so opined, it is inadmissible hearsay to the extent it is offered for the truth of that opinion offered. What is more, that opinion indicates that the inability to access services "might indicate" a

lack of reasonable efforts—not that it inevitably does.  Here, mother's inability to start her full drug and alcohol program and her 12-step program did not.

**DISPOSITION**

The order is affirmed.

<u>NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS</u>.


_____, J.

HOFFSTADT


We concur:


_____, P. J.

LUI


_____, J.

CHAVEZ