Filed 7/11/16  V.B. v. Superior Court CA5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

**IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA**

**FIFTH APPELLATE DISTRICT**

| | |
|---|---|
| V.B.,<br><br>Petitioner,<br><br>v.<br><br>THE SUPERIOR COURT OF FRESNO COUNTY,<br><br>Respondent;<br><br>FRESNO COUNTY DEPARTMENT OF SOCIAL SERVICES,<br><br>Real Party in Interest. | F073518<br><br>(Fresno Super. Ct. Nos. 14CEJ300356-1, 14CEJ300356-2 & 14CEJ300356-3)<br><br><br>**OPINION** |

**THE COURT**[*]

ORIGINAL PROCEEDINGS; petition for extraordinary writ review.  Mary Dolas, Judge.

V.B., in pro. per., for Petitioner.

No appearance for Respondent.

Daniel C. Cederborg, County Counsel, and Brent C. Woodward, Deputy County Counsel, for Real Party in Interest.

-ooOoo-

---

[*]    Before Levy, Acting P.J., Kane, J. and Detjen, J.

V.B. (mother), in propria persona, seeks extraordinary writ relief from the juvenile court's orders issued at a contested 12-month review hearing (Welf. & Inst. Code, § 366.21, subd. (f)(1))[1] terminating her reunification services and setting a section 366.26 hearing as to her now six-year-old daughter A.C., four-year-old daughter K.C., and three-year-old son C.C., Jr. Mother contends the juvenile court erred in finding she was provided reasonable anger management services. We deny the petition.

## PROCEDURAL AND FACTUAL SUMMARY

In November 2014, the Fresno County Department of Social Services (department) received a report that mother and Christopher C., the father (father) of then four-year-old A.C., three-year-old K.C., and two-year-old C.C., Jr., were using drugs and did not have stable housing. The emergency response social worker found all three children in diapers and noted that they had very limited verbal skills. They also appeared to have been neglected.

The department took the children into protective custody and placed them with relatives. Not long after, the department returned the children to mother's custody and offered both parents voluntary family maintenance services which they accepted. They also agreed there would be no domestic violence in front of the children. However, approximately a month later, in December 2014, father pushed mother and head-butted her in the forehead in the presence of the children, leaving a "goose egg shaped" bump on her head. Mother said he also hit her in the face but it did not cause any bruising.

The department took the children into protective custody and placed them in foster care. The department also filed a dependency petition on their behalf which the juvenile court sustained. In April 2015, the juvenile court ordered the children removed from parental custody and ordered mother and father to participate in reunification services.

---

[1]     All references are to the Welfare and Institutions Code.

2

Mother was specifically ordered to participate in parenting classes, be evaluated for domestic violence and mental health services, and participate in supervised visits.

In June 2015, mother completed a parenting program and a mental health assessment and began individual therapy. In addition, she had been assessed for domestic violence services and referred to the 26-week Phoenix Program, a domestic violence program which combined child abuse batterer's treatment and group sessions for victims. In July 2015, mother contacted her social worker, Alyssa Cruz-Rodriguez, and stated she did not believe she was benefitting from the Phoenix Program because she was having difficulty following the course curriculum. A meeting was conducted to address mother's concern and the substance abuse specialist, Minerva Perez, referred mother to another Phoenix Program at Universal Health.

Father, meanwhile, was not participating in his court-ordered services and was spot testing positive for methamphetamine prior to visits. As a result, he had not visited the children since late July 2015. In addition, he and mother had an argument at the visitation center in June in which he accused her of taking his paycheck. He appeared to be under the influence of some unknown substance and threatened to break the windows of mother's car.

In August 2015, Cruz-Rodriguez met with mother and father to discuss the possibility of advancing beyond supervised visits. Father and mother stated they were in a relationship. Cruz-Rodriguez expressed the department's concerns that father was not participating in his services and that he and mother continued to engage in domestic violence. Father said he would start to "get stuff done" and mother agreed to work on tools and techniques to demonstrate that she could be protective. Cruz-Rodriguez decided that visits would remain supervised.

In October 2015, mother notified Cruz-Rodriguez that she was arrested after an incident with father. Mother would later explain that she hit father in the head with a cell phone and spent a few hours in jail.

In November 2015, at the six-month review hearing, the juvenile court continued mother's reunification services to the 12-month review hearing. The court terminated father's reunification services.

In December 2015, mother requested a transfer out of the Phoenix Program because she did not believe she was learning anything. Cruz-Rodriguez, mother and substance abuse specialist Lawrence Rice met and discussed mother's request. Mother explained she needed anger management classes because she became extremely frustrated when speaking to people. During the conversation, she referred to father as her "boyfriend." Lawrence asked her if she would consider terminating her relationship with father if it meant resuming custody of her children. Mother said she would consider it but said she did not see him daily and did not believe maintaining a relationship with him was a problem. Rice explained to mother that she should continue to attend the Phoenix Program. He said it was the best program for her because it incorporated components of the anger management and child batterer's programs. He also provided mother a list of anger management services.

In its report for the 12-month review hearing, the department recommended the juvenile court terminate mother's reunification services and continue supervised visitation. The department reported that mother participated in all of her court-ordered services and regularly visited the children. However, the department opined that her progress was moderate and she had not demonstrated the ability to protect the children.

In April 2016, the juvenile court conducted a contested 12-month review hearing. Mother's attorney argued for return of the children to mother's custody under family maintenance services or continued reunification services.

Mother testified she completed the Phoenix Program and learned to express how she felt instead of blaming other people and to employ positive thinking. She also completed the Fresno Family Counseling Program, a 12-week anger management group counseling program, which she paid for herself. She took the course because she wanted more knowledge and wanted to be able to demonstrate to her children that hitting was not the way to deal with problems. She learned that her negative thinking escalated her anger and she learned to diffuse her anger through focused relaxation. She said she last saw father during a team decision meeting in March 2016, and prior to that in October 2015, when she was arrested for domestic violence. She also testified that she lived with her mother and was employed. If the children were returned to her, they would live with her at her mother's home.

Jessica Rodriguez, a facilitator for mother's anger management classes, testified about the various topics taught in the program. She said mother attended all the classes and was an active participant.

Cruz-Rodriguez testified that mother continued to exhibit anger and frustration and she did not think she was employing the tools and techniques she was taught in her classes. In addition, mother gave conflicting information as to whether she was still in a relationship with father. County counsel asked Cruz-Rodriguez about her conversation with mother regarding anger management. She explained that the department did not ordinarily offer anger management to families in reunification and that the substance abuse specialist was the one who makes the referral. In mother's case, the substance abuse specialist determined that the Phoenix Program was best suited for mother because it incorporated concepts from the anger management class. For her part, Cruz-Rodriguez encouraged mother to discuss anger management with her therapist. She did not attempt to find out how mother was progressing in her anger management class.

The juvenile court found it would be detrimental to return the children to mother's custody and that the department provided her reasonable reunification services. The court specifically addressed anger management, stating the department addressed whether she was in an appropriate program based on her assessment and also provided her additional resources for her to utilize if she chose. The court also found there was not a substantial probability the children could be returned to her in the two months before the 18-month review hearing in June 2016. Consequently, the court terminated mother's reunification services and set a section 366.26 hearing.

Mother filed a timely petition for extraordinary writ and appeared for oral argument.

## DISCUSSION

Mother contends the department failed to provide her an anger management class. Therefore, she argues, the department failed to provide her reasonable reunification services and the juvenile court erred in finding they were reasonable and in terminating them. We disagree.

At the 12-month review hearing, the juvenile court must determine if reasonable services have been provided or offered to the parent. (§ 366.21, subd. (f)(1)(A).) Services are reasonable when the department identifies the family's problems, offers services targeting those problems, maintains reasonable contact with the parent(s) and makes reasonable efforts to assist in areas where compliance is difficult. (*In re Riva M*. (1991) 235 Cal.App.3d 403, 414.) The juvenile court cannot terminate reunification services and set a section 366.26 hearing unless there is clear and convincing evidence that reasonable services were provided or offered. (§ 366.21, subd. (g)(1)(C)(ii).)

On a challenge to the juvenile court's reasonable services finding, we view the evidence in a light most favorable to the respondent, indulging all legitimate and reasonable inferences to uphold the court's ruling. (*In re Misako R*. (1991) 2 Cal.App.4th

6

538, 545.) If substantial evidence supports the juvenile court's finding, we will not disturb it. (*Ibid.*) As mother bears the burden of demonstrating error on appeal (*Winograd v. American Broadcasting Co.* (1998) 68 Cal.App.4th 624, 632), she must show that the juvenile court's finding that the department provided her reasonable services is not supported by substantial evidence.

The department identified domestic violence as a significant component of mother's services plan and referred her for an assessment. As a result of the assessment, mother was referred to the Phoenix Program. In December 2015, mother requested an anger management class. Cruz-Rodriguez directed the issue to Rice who, as the substance abuse specialist, was the one responsible for referring mother to the appropriate resource for anger management. Rice, after discussing the matter with mother and Cruz-Rodriguez, concluded that the Phoenix Program in which mother was then participating, offered mother the best anger management services available. He recommended she continue in the program. Mother did and graduated from the program in February 2016. Rice also provided mother a list of resources, if she wanted to pursue them on her own. She did that also and completed an anger management group counseling program.

In order to prevail on her reasonableness of services issue, mother would have to show that the Phoenix Program was inadequate to address her anger management needs. Mother fails, however, to meet her burden of proof on this issue. Instead, she argues the department's failure "to provide classes that directly deal with anger issues is not providing reasonable services." However, she does not direct this court to any evidence in the record to establish that the Phoenix Program does not directly deal with anger issues, nor did we find any such evidence in our review of the record. There is, however, undisputed evidence that the Phoenix Program included an anger management component and was best suited to meet mother's anger management needs. On that evidence alone the juvenile court could find that mother was provided reasonable anger

7

management services.  We, thus, affirm the juvenile court's finding, mother was provided reasonable anger management services and its orders terminating her reunification services, and setting a section 366.26 hearing.

## DISPOSITION

The writ petition is denied.  This opinion is final forthwith as to this court.