Filed 7/29/22 In re K.C. CA5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| In re K.C., a Person Coming Under the Juvenile Court Law. | |
| KERN COUNTY DEPARTMENT OF HUMAN SERVICES, <br><br> Plaintiff and Respondent, <br><br> v. <br><br> CHRISTOPHER B., <br><br> Defendant and Appellant. | F083437 <br><br> (Super. Ct. No. JD141759-00) <br><br> **OPINION** |

APPEAL from a judgment of the Superior Court of Kern County. Gary Riebesell, Temporary Judge. (Pursuant to Cal. Const., art. VI, § 21.) Marcos R. Camacho and Therese M. Foley, Judges.*

Elizabeth C. Alexander, under appointment by the Court of Appeal, for Defendant and Appellant.

Margo A. Raison, County Counsel, and Alexandria M. Ottoman, Deputy County Counsel, for Plaintiff and Respondent.

---

* Judge Camacho presided on May 10, 2021; Temporary Judge Riebesell presided on July 19, 2021; Judge Foley presided over all other hearings pertinent to this appeal.

-ooOoo-

Appellant Christopher B. (father) is the biological father of the child, K.C. (the child), who is the subject of a dependency case. Father challenges the juvenile court's orders issued at a disposition hearing where the child was returned to his mother's custody on a plan of family maintenance and jurisdiction was transferred to the San Bernardino County Superior Court. Father contends the juvenile court abused its discretion when it previously granted multiple continuances of the disposition hearing. We find that father forfeited this claim by failing to raise it below. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

**Initial Removal**

On January 7, 2021, the Kern County Department of Human Services (department) received a referral alleging the child's mother, Tiffany M. (mother), tested positive for amphetamines at the time of the child's birth. Mother denied using amphetamines, but she admitted to using fentanyl. It was reported that mother had a history of drug abuse and received no prenatal care. The child was transferred to the neonatal intensive care unit (NICU) due to respiratory distress and withdrawals.

Father called the department's emergency response social worker, and he explained how mother told him that he was the child's father. Hospital staff indicated that mother listed an alleged father, Mario C. (Mario), as the child's father. Mother and Mario told the social worker that Mario was the child's father. Father repeatedly called the hospital to obtain information by claiming the child's left foot was the same as his own left foot. Hospital staff refused to provide any information due to mother's conflicting claim regarding paternity.

Mother and Mario were currently participating in reunification services for the child's sibling, L., who had a six-month review hearing set in May 2021. Mother admitted to the use of heroin right before she gave birth to the child. On January 28, 2021, the child remained in the hospital as he continued to gain weight and be weaned

2.

from morphine. The next day, father informed the department that his request for emergency custody and DNA testing was denied by the family court. Father insisted that he would continue to provide the department with his efforts through family court.

The child remained in the NICU for several weeks as he showed very slow improvement in overcoming withdrawals. On February 24, 2021, the juvenile court authorized a protective custody warrant for the child, after hospital staff explained that the child needed a consistent caregiver to be trained in consoling, caring, and bonding with the child. The department also filed an original petition alleging the child was described by Welfare and Institutions Code section 300, subdivisions (b)(1) and (j).[1] The petition alleged that the child was at risk of suffering serious physical harm as a result of mother's substance abuse and past neglect of his sibling, L.

At the initial detention hearing held on February 25, 2021, mother and father were both sworn for testimony regarding paternity. Mother testified that the biological father of the child was "[m]ost likely" father. Mother had never been married, and she did not live with father at any point of her pregnancy. Mother did not know whether father signed a voluntary declaration of parentage, but she was served with filings from father's parentage action. Mother also testified that father never attended any prenatal visits or provided support for the child.

Mother denied that it was possible that Mario was the biological father of the child, but she began living with Mario three months into her pregnancy. Mario had not signed a declaration of paternity, but he provided mother with support to help care for the child. Mother claimed father had no response when he was informed of her pregnancy. Mother and father had no further contact until she notified him of the child's birth.

---

[1] All further statutory references are to the Welfare and Institutions Code unless otherwise stated.

In father's testimony regarding paternity, he acknowledged that mother informed him of the pregnancy. However, he claimed she planned on having an abortion the next day, and she told him that she had an abortion the next time he saw her in town. Father learned of the child's birth the day after he was born, and father was unable to get information because Mario was listed as the child's father. Father filed a petition with the family court shortly after the child's birth to establish himself as the child's father. Father was preparing his home to obtain custody of the child.

The juvenile court deferred the issue of paternity, ordered DNA testing between father and the child, and granted the parents' request for a one-day continuance of the detention hearing. Temporary detention findings were made without prejudice to the parents and the child was ordered detained pending further hearing. At the continued detention hearing on March 1, 2021, the juvenile court completed its Indian Child Welfare Act (ICWA) inquiry and found there was no reason to know the child was an Indian child.

Counsel for mother, father, and Mario each entered denials and waived time. The juvenile court ordered the child detained from the parents' custody and supervised visitation to be provided to mother twice weekly. Both fathers remained alleged pending the results of the DNA testing for father, and the juvenile court set a combined hearing for jurisdiction, disposition, and paternity on April 12, 2021.

Father filed a Statement Regarding Parentage (JV-505 form) stating his belief that he was the presumed father of the child. Father told his family that the child was his own since he was informed of the birth, and he began to prepare his home for the child. Father wanted the juvenile court to know that he believed mother terminated her pregnancy, tried to reach out to the hospital several times, and filed a parentage petition in family court. Mario also filed a JV-505 form, in which he claimed to have established parentage of the child by a voluntary declaration signed in January 2021. Mario indicated his provision of financial support and "everything" for the child. Mario

4.

acknowledged that he was not the biological father, but he wanted to be a part of the child's life.

**Jurisdiction and Disposition**

The report prepared for the jurisdiction hearing, dated March 29, 2021, noted the child's placement with a nonrelative extended family member. Mario acknowledged his incarceration until June 2020, and he understood he was not the biological father of the child. Mother claimed father was " 'very strung out' " and had an unsafe and dirty home. Father denied any drug use since he began serving a prison sentence in 2018. The social worker was informed of the DNA test being scheduled for March 30, 2021. Father enrolled in a 10-hour parenting class, but he had not submitted to a drug test. The department recommended that the allegations in the original petition be found true.

On April 12, 2021, all parents were present with counsel for the combined hearing. The department verbally shared the results of the DNA testing, which revealed father as the child's biological father. A disposition report had not yet been completed by the department. The juvenile court granted father's request to have his paternity status elevated to biological father of the child. Mario requested to be elevated to the child's presumed father, but the child's counsel noted her concern that Mario signed the voluntary declaration of parentage with knowledge that he was not the biological father. The juvenile court indicated that it would reserve the issue of presumed father status for Mario to the disposition hearing.

All parties submitted on the department's recommendation for jurisdiction with waivers of rights, and the juvenile court found the allegations of the original petition true. All parties agreed to have the disposition hearing heard in combination with the six-month review hearing that was already set for the child's sibling on May 10, 2021. Father's request for visitation with the child was granted to take place twice per week for two hours and supervised by the department or its designated agent.

The department's report for disposition, dated May 3, 2021, recommended that the child remain in out-of-home care, mother be denied reunification services pursuant to section 361.5, subdivision (b)(10) and (13), Mario be denied reunification services based upon his status as an alleged father, and father be provided with reunification services. Family reunification services were determined to be appropriate for the father because his home was not suitable for an infant, and the services would provide him with time to secure stable housing, develop skills in caring for a child, and submit to random drug testing.

Mother, father, and Mario were present with counsel for the disposition hearing on May 10, 2021. Mother and Mario requested a date for a contested hearing on the recommendation to deny them reunification services. Father's counsel requested 20 minutes of the contest hearing time to present his position. The juvenile court stated its intent to hear the issue of the child's disposition in combination with L.'s contested review hearing. The parties agreed to set the hearing for the juvenile court's next available date of July 19, 2021.

On July 19, 2021, the normally assigned judicial officer was unavailable, and counsel for all parties agreed to a continuance to August 5, 2021. Mother's counsel made note of a contested hearing in another matter that was set for the same date.

Father was present with his appointed counsel at the August 5, 2021 hearing. A third judicial officer presided over the hearing as well as all subsequent hearings in the matter. Counsel for the department requested to continue the combined hearing past the 18-month review date of September 24, 2021, for the child's sibling. Father's counsel stated that there was "[n]o objection" to the request. The juvenile court specifically explained that the proposed date would be "moving past" some time constraints for the hearings, and it asked if the parties would waive the time constraints. Father's counsel responded "[t]hat's fine," and stated that father would no longer be contesting the department's recommendation. The juvenile court set the contested and combined

6.

hearings for the child and sibling for the next available date of October 4, 2021. No party objected.

In a supplemental report dated September 24, 2021, the department recommended that the child be placed with mother on a family maintenance case plan and father not be provided with reunification services. The department also filed a motion to transfer the matter to San Bernadino County due to mother's change of residence. Mother was participating in unsupervised visits, and she had completed substance abuse counseling. Father had completed parenting and neglect classes, but he tested positive for methamphetamine in July 2021 and fentanyl in August 2021. The department was still unable to find father's home suitable for an infant, and he was observed falling asleep while holding the child during several visits.

On September 28, 2021, father's counsel filed a brief regarding father's paternity status, which also requested judicial notice of documents filed in the family court action. The brief presented argument that father should be recognized as either a presumed or "*Kelsey S.*" (italics added) father.[2]

On October 4, 2021, all parties were present, but counsel for the department and child were unavailable. All parties, including father's counsel, agreed to trail the hearing for one day to allow all regularly appearing counsel to be present.

On October 5, 2021, all parties were present and represented by counsel. The juvenile court proceeded with the review hearing for the child's sibling before turning to the child's disposition hearing. County counsel expressed its belief that father was "pretty close to a *Kelsey S.* father in this particular case." (Italics added.) County counsel then claimed Mario should be dismissed from the case if he is "removed from the birth certificate." The child's counsel agreed that father was a "*Kelsey S.*" (italics added)

---

[2] "*Kelsey S.*" refers to an unwed, biological father who promptly comes forward after learning of a pregnancy and demonstrates a full commitment to his parental responsibilities from the case of *Adoption of Kelsey S.* (1992) 1 Cal.4th 816.

father, but he believed that a provision of reunification services to the father would be in the child's best interests. Father requested to be elevated to a presumed father, and he also made a "motion to strike" Mario's name from the child's birth certificate based upon the DNA results. Father requested family reunification services and increased visitation with the child. Mario initially wanted to be the child's presumed father, but he submitted the matter to the juvenile court because he did not want to interfere with mother's family maintenance services. Mother submitted on the "*Kelsey S.* issue." (Italics added.)

The juvenile court questioned the possibility of the child having two presumed fathers, and why Mario would not be considered a presumed father. After considering suggestions from mother and county counsel, the juvenile court proceeded to adjudge the child a dependent, provide family maintenance services to mother, and transfer the matter to San Bernardino County. The juvenile court stated that it was going to leave the determination of paternity status and the determination of services to San Bernardino County.

The juvenile court was not convinced that father provided sufficient evidence that he promptly demonstrated a full commitment to his parental responsibilities in order to qualify as a "*Kelsey S.*" (italics added) father. It cited father's failure to regularly visit, positive drug tests, and propensity to fall asleep during visits as contradicting evidence. The juvenile court believed any paternity findings would require testimony for a "fuller picture." Acknowledging the fundamental interest involved, the juvenile court reserved the paternity issues for an assessment of paternity status and any appropriate services by San Bernardino County. Father's visitation was ordered to continue twice per week with supervision, and his request for paternity status was transferred for determination by the San Bernardino County Superior Court.

Father made no objection to the transfer of the case or to the continuance of his request for a determination of paternity status.

8.

**DISCUSSION**

Section 352, subdivision (a)(1) provides that a juvenile court "may continue any hearing under this chapter beyond the time limit within which the hearing is otherwise required to be held, provided that a continuance shall not be granted that is contrary to the interest of the minor. In considering the minor's interests, the court shall give substantial weight to a minor's need for prompt resolution of his or her custody status, the need to provide children with stable environments, and the damage to a minor of prolonged temporary placements."

Continuances are expressly discouraged in the juvenile court and "should be difficult to obtain." (*Jeff M. v. Superior Court* (1997) 56 Cal.App.4th 1238, 1242.) The dependency statutes consistently encourage courts to accelerate proceedings, so the child is not kept "in limbo" any longer than is absolutely necessary. (§ 352; *In re Emily L.* (1989) 212 Cal.App.3d 734, 739.) The moving party has the burden to demonstrate good cause for a requested continuance. (See Evid. Code, §§ 500, 550, subd. (b).)

Except on a finding of exceptional circumstances, when a minor has been removed from his or her parents' custody, a juvenile court may not grant a continuance that would cause the dispositional hearing to be completed over 60 days after the hearing at which the minor was ordered remove or detained. (§ 352, subd. (b).) Further, "the court may not, under any circumstances, grant continuances that would cause the disposition hearing to be completed more than six months after the detention hearing." (*Renee S. v. Superior Court* (1999) 76 Cal.App.4th 187, 196.)

"As a general rule, a party is precluded from urging on appeal any point not raised in the trial court." (*In re Riva M.* (1991) 235 Cal.App.3d 403, 411-412; see *In re S.B.* (2004) 32 Cal.4th 1287, 1293 ["[d]ependency matters are not exempt from this rule"].) "The purpose of this rule is to encourage parties to bring errors to the attention of the trial court, so that they may be corrected. [Citation.]" (*In re S.B.*, at p. 1293.) Any other rule would " ' " 'permit a party to play fast and loose with the administration of justice by

9.

deliberately standing by without making an objection of which he is aware . . . .' " ' " (*In re Riva M.*, at p. 412.) Although the terms "forfeiture" and "waiver" are often used interchangeably, it is more accurate to use the term "forfeiture" when referring to " 'the loss of the right to raise an issue on appeal due to the failure to pursue it in the trial court.' " (*Porterville Citizens for Responsible Hillside Development v. City of Porterville* (2007) 157 Cal.App.4th 885, 912.)

While "application of the forfeiture rule is not automatic," our Supreme Court has instructed that "the appellate court's discretion to excuse forfeiture should be exercised rarely and only in cases presenting an important legal issue." (*In re S.B.*, *supra*, 32 Cal.4th at p. 1293.) This, again, is especially so in dependency proceedings. Because these matters implicate the well-being of children and considerations such as permanency and stability, discretion to excuse forfeiture "must be exercised with special care." (*Ibid*.)

Father contends the juvenile court abused its discretion by continuing the disposition hearing five times, over the course of nearly five months. Father argues that the delays in hearing the disposition were prejudicial because they interfered with his ability to become a presumed father and participate in visitation and services. We reject father's contention and find that any claim he may have had that the juvenile court erred by continuing the disposition hearing beyond the 60-day time limit is forfeited.

At no time in the proceedings did father object to the continuances of the disposition hearing or determination on his paternity status. Father does not dispute that he expressly affirmed that the continued dates for the contested disposition were acceptable on each occasion. Although the disposition hearing did not occur within the statutory timeframe (§§ 352, 358), father's counsel did not raise this argument in the juvenile court, and counsel never objected when the disposition hearing was continued. (§ 352, subd. (c) [absence of an objection from party represented by counsel "shall be deemed a consent to the continuance" of the hearing beyond the statutory time period]; *In re Richard H.* (1991) 234 Cal.App.3d 1351, 1362 [party who failed to object to

10.

continuances of jurisdiction and disposition hearings waived right to claim harm from the delay].)

Thus, father is unable to complain about this delay on appeal where the hearing was continued for several months with the agreement of all parties, including father. (*In re G.P.* (2014) 227 Cal.App.4th 1180, 1196 [party who "invited the error of which he now complains" could not "raise the issue on appeal"].) Based on the foregoing, we find no reason why the juvenile court's judgment should not be affirmed where father acquiesced to the multiple continuances of the disposition hearing that he now complains of.

## **DISPOSITION**

The juvenile court's orders are affirmed.

DETJEN, J.

WE CONCUR:

HILL, P. J.

MEEHAN, J.