Filed 9/29/22  In re Leah O. CA1/5

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIRST APPELLATE DISTRICT

## DIVISION FIVE

| | |
|---|---|
| In re LEAH O., a Person Coming Under the Juvenile Court Law. | |
| HUMBOLDT COUNTY DEPARTMENT OF HEALTH AND HUMAN SERVICES,<br><br>　　　Plaintiff and Respondent,<br><br>v.<br><br>KENDRA S. et al.,<br><br>　　　Defendants and Appellants. | A164570<br><br>(Humboldt County<br>Super. Ct. No. JV2000123) |

This is an appeal from an order terminating the parental rights of defendants, Kendra S. (mother) and Richard O. (father), to their infant daughter, Leah O. (minor).  Parents seek conditional reversal on the grounds that the juvenile court and plaintiff, Humboldt County Department of Health and Human Services (department), failed to fully comply with the inquiry and notice requirements of the Indian Child Welfare Act of 1978 (25 U.S.C. § 1901 et seq.) (ICWA).  We disagree and affirm.

### FACTUAL AND PROCEDURAL BACKGROUND

On August 18, 2020, a juvenile dependency petition was filed pursuant to Welfare and Institutions Code section 300, subdivision (b)(1).  This petition

1

alleged minor, born in July 2020, was at substantial risk of suffering serious physical or emotional harm due to parents' inability to care for her.[1] Father indicated to the department that he had Indigenous American[2] ancestry on his father's side with an Apache tribe and that his paternal grandmother was registered with the "Comchado Apache" tribe. The department reported that it would "reach out to the paternal grandfather to obtain more information and will start the Tribal collaboration process."

In its September 9, 2020 jurisdiction report, the department stated that it asked paternal grandfather, Jose O., about his family's Indigenous American ancestry. Jose O. responded that his deceased father (paternal great-grandfather) and deceased grandmother (paternal great-great-grandmother) were from San Antonio, Texas, and were members of an Apache tribe. Jose O. reported that paternal great-grandfather's name was Riley O. but that he did not know paternal great-great-grandmother's name. Based on this information, the department provided parents with Judicial Council Forms, form ICWA-020, and advised that once parents completed these forms it would initiate "ICWA-030 [notice]." Following the jurisdiction hearing, the court found jurisdiction and scheduled a disposition hearing.

On October 1, 2020, the department sent ICWA-030 notice forms indicating that minor may have Indigenous American ancestry to parents, the Bureau of Indian Affairs (BIA), and eight Apache tribes. The notice forms stated that father and two "Paternal Great grandfather[s]," identified

[1] Parents were allegedly unable to provide regular care for minor due to issues with substance abuse, domestic violence, mental health and, as to mother, intellectual disabilities.

[2] For purposes of this appeal, we use the term "Indigenous American" to refer to persons of Indian or Native American ancestry unless quoting from a case or statute.

as Jose O. and Riley O., had possible Apache heritage. The department filed copies of U.S. Postal Service certified mail receipts for these notices with the court.

On October 8, 2020, the disposition hearing was held. The juvenile court declared minor a dependent, removed her from parents' care, and ordered reunification services and visitation for parents. The court also reviewed the department's ICWA report indicating that father may have Apache ancestry and that ICWA-030 notices had been sent to parents, the BIA and eight Apache tribes. The court adopted the report's finding that the ICWA may apply.

At the six-month review hearing on April 8, 2021, the juvenile court noted that according to the department's report, the ICWA-030 forms were mailed to the BIA and the identified tribes on October 1, 2020. The court asked the department to confirm none of these entities responded to the notice. After the department confirmed this fact, the court made a finding that the ICWA does not apply.

The 12-month review hearing was held on October 13, 2021. The department recommended terminating reunification services due to, among other things, mother's unaddressed special needs (mental illness); parents' unaddressed domestic violence issues; and parents' continued inability to secure safe, hygienic and stable housing in which to care for minor. After taking the matter under submission, the juvenile court again found that the ICWA does not apply and that no new information regarding minor's possible Indigenous American ancestry had been received. The court then adopted the department's recommendation to terminate reunification services and set a hearing on the termination of parental rights and implementation of a permanent plan of adoption.

3

On February 9, 2022, following a contested hearing, the juvenile court terminated parental rights and selected adoption as minor's permanent plan.

In February 2022, parents filed separate notices of appeal from the order terminating parental rights.

## DISCUSSION

Parents seek conditional reversal of the order terminating their parental rights on the grounds that the juvenile court erred in finding that the ICWA is not applicable. Parents argue there was no basis for the court's finding because the department did not meet its duties of inquiry and notice under the ICWA.

### I.    *Standard of Review.*

A juvenile court's ICWA findings are reviewed for substantial evidence. (Welf. & Inst. Code, § 224.2, subd. (i)(2) [ICWA findings "subject to reversal based on sufficiency of the evidence"].)[3]  With respect to the broader issue of whether an ICWA inquiry was appropriate and sufficient in light of the facts of a particular case, we review the juvenile court's determination for abuse of discretion. (*In re Ezequiel G.* (2022) 81 Cal.App.5th 984, 1005; compare *In re D.S.* (2020) 46 Cal.App.5th 1041, 1051 [independent review of the record on appeal to decide whether ICWA requirements were met].)  In conducting this review, we view the record in the light most favorable to the juvenile court's order, indulging all legitimate and reasonable inferences to uphold it. (*In re Charlotte V.* (2016) 6 Cal.App.5th 51, 57.)

Where ICWA notice was given to pertinent tribes, errors or omissions in the notice are reviewed under the harmless error standard. (*Nicole K. v. Superior Court* (2007) 146 Cal.App.4th 779, 784.)  Reversal is not required

___

[3] Unless otherwise specified, all statutory citations herein are to the Welfare and Institutions Code.

4

unless the appellants can show a reasonable probability they would have received a more favorable result absent the error(s).  (*In re Y.W.* (2021) 70 Cal.App.5th 542, 558.)

## II.    *The ICWA Framework.*

"The ICWA (25 U.S.C. §§ 1901–1963) was enacted for ' "the protection of the best interests of Indian children, and the promotion of stable and secure Indian tribal entities.  [Citation.]" ' (*In re Crystal K.* (1990) 226 Cal.App.3d 655, 661 [276 Cal.Rptr. 619].)"  (*In re Riva M.* (1991) 235 Cal.App.3d 403, 410.)  "[T]he ICWA applies to any state court proceeding involving the foster care or adoptive placement of, or the termination of parental rights to, an Indian child.  (25 U.S.C. §§ 1903(1), 1911(a)–(c), 1912–1921.)  'Indian child' is defined as a child who is either (1) 'a member of an Indian tribe' or (2) 'eligible for membership in an Indian tribe and . . . the biological child of a member of an Indian tribe . . . .' (25 U.S.C. § 1903(4).)"  (*In re Jonathon S.* (2005) 129 Cal.App.4th 334, 338.)

Under the ICWA, an Indigenous American tribe has the right to intervene or a qualified right to transfer a proceeding to its jurisdiction in certain involuntary actions involving Indigenous American children residing off the reservation.  (25 U.S.C. § 1911; *In re Isaiah W.* (2016) 1 Cal.5th 1, 8; *In re Baby Girl A.* (1991) 230 Cal.App.3d 1611, 1616–1617.)  To that end, a juvenile court has an affirmative and continuing duty under California dependency law to inquire into a child's Indigenous American status.  (Welf. & Inst. Code, § 224.3, subd. (a).)

Section 224.2 "codifies and elaborates on ICWA's requirements of notice to a child's parents or legal guardian, Indian custodian, and Indian tribe, and to the BIA."  (*In re Isaiah W., supra*, 1 Cal.5th at p. 9.)  "When the Agency has a reason to believe a child is an Indian child, as in this case, it must

satisfy three requirements. First, the Agency must interview the parents, Indian custodian, and extended family members to gather relevant information, specified by statute, regarding the details of the child's birth, family members, and possible tribal affiliations. (§ 224.2, subd. (e)(1); see also § 224.3, subd. (a)(5).) Second, the Agency must contact 'the [BIA] and the State Department of Social Services for assistance in identifying the names and contact information of the tribes in which the child may be a member, or eligible for membership in, and contacting the tribes and any other person that may reasonably be expected to have information regarding the child's membership status or eligibility.' (§ 224.2, subd. (e)(2).) Third, the Agency must contact 'the tribe or tribes and any other person that may reasonably be expected to have information regarding the child's membership, citizenship status, or eligibility.' (*Id.*, subd. (e)(3).) The Agency's contact with the tribe 'shall include sharing information identified by the tribe as necessary for the tribe to make a membership or eligibility determination, as well as information on the current status of the child and the case.' (*Ibid.*)" (*In re D.S., supra*, 46 Cal.App.5th at pp. 1052–1053.)

If the Agency's inquiry gives the Agency or the juvenile court a "reason to know" the child is an Indian child, then notice pursuant to ICWA must be sent to the pertinent tribes. (§ 224.2, subd. (f).) There is a "reason to know" if "(1) A person having an interest in the child . . . informs the court that the child is an Indian child. [¶] (2) The residence . . . of the child [or] the child's parents . . . is on a reservation or in an Alaska Native village. [¶] (3) Any participant in the proceeding . . . informs the court that it has discovered information indicating that the child is an Indian child. [¶] (4) The child . . . gives the court reason to know that the child is an Indian child. [¶] (5) The court is informed that the child is or has been a ward of a tribal court. [or]

6

[¶] (6) The court is informed that either parent or the child possess [*sic*] an identification card indicating membership or citizenship in an Indian tribe." (§ 224.2, subd. (d).)

The juvenile court must determine whether adequate and proper notice under the ICWA has been given. (*In re Charlotte V., supra*, 6 Cal.App.5th at p. 57.) If so, "and if neither the BIA nor any tribe provides a determinative response within 60 days, then the court may determine that ICWA does not apply to the proceedings. (§ 224.3(e)(3).) At that point, the court is relieved of its duties of inquiry and notice (§ 224.2, subd. (b)), unless the BIA or a tribe subsequently confirms that the child is an Indigenous American child (§ 224.3(e)(3))." (*In re Isaiah W., supra*, 1 Cal.5th at pp. 14–15.) If, however, "proper notice is not given under the ICWA, the court's order is voidable. (25 U.S.C. § 1914.)" (*Dwayne P. v. Superior Court* (2002) 103 Cal.App.4th 247, 254; accord, *In re Desiree F.* (2000) 83 Cal.App.4th 460, 469 ["notice [is] a 'key component of the congressional goal to protect and preserve Indian tribes and Indian families' "].) Moreover, because the juvenile court's ICWA duties are continuing, a finding that the ICWA does not apply must be reversed for further inquiry under section 224.3 if "[the court] subsequently receives information providing reason to believe that the child is an Indian child . . . ." (Cal. Rules of Court, rule 5.482(c)(2).)

## III.  *Relevant Facts.*

Parents contend the department and juvenile court failed to comply with these rules by failing to (1) conduct an adequate inquiry into minor's possible Indigenous American ancestry and (2) properly notify the pertinent tribes about her possible Indigenous American ancestry. The following facts are relevant.

7

In August 2020, the department was told by father that he had Indigenous American ancestry with an Apache tribe and that one of his grandparents was registered with the "Comchado Apache" tribe. According to the September 9, 2020 jurisdiction report, the department asked paternal grandfather, Jose O., about his Indigenous American ancestry and was told by Jose O. that his father, Riley O. (paternal great-grandfather), and grandmother (paternal great-great-grandmother) were from San Antonio, Texas, and were members of an Apache tribe. Jose O. did not know paternal great-great-grandmother's name. Jose O. did not himself claim a tribal affiliation. Based on this information, the department provided parents with ICWA-020 forms and stated its intent to initiate the ICWA notice process after their completed forms were returned.

On October 1, 2020, the department sent notice regarding minor's possible Indigenous American ancestry using the ICWA-030 form to the BIA, Apache Tribe of Oklahoma, Fort Sill Apache Tribe of Oklahoma, Jicarilla Apache Nation, Mescalero Apache Tribe, San Carlos Apache Tribe, White Mountain Apache Tribe, Tonto Apache Tribe of Arizona, and Yavapai-Apache Nation. These notices identified father and two "Paternal Great grandfather[s]," listed as Jose O. and Riley O., as having possible Apache heritage but did not provide Jose O.'s or Riley O.'s addresses, birth dates or birthplaces.

## IV.    *Application of ICWA Law to the Facts.*

### A.    **Inquiry.**

Parents contend[4] the department's inquiry into minor's possible Indigenous American ancestry was inadequate because the department failed

---

[4] We reject the department's threshold argument that this appeal is moot due to a March 21, 2022 stipulation and entry of order. This stipulation

8

to (1) obtain paternal grandfather's (Jose O.'s) birth date, birthplace or current and past residences; (2) investigate Jose O.'s statement that his father (Riley O.) and grandmother (name unknown) were Apache and from San Antonio; or (3) document its efforts to ask father or Jose O. to clarify father's statement that his grandmother was a member of the "Comchado Apache" tribe. Based on these failures, parents contend the juvenile court erred in finding the ICWA was not applicable. We disagree.

We begin with section 224.2, subdivision (e)(1). Because the department had reason to believe minor could have Indigenous American ancestry, this provision required the department to interview minor's parents and extended family members. "Under both ICWA and California law, ' "extended family member[s]" ' include the child's 'grandparent, aunt or uncle, brother or sister, brother-in-law or sister-in-law, niece or nephew, first or second cousin, or stepparent.' (25 U.S.C. § 1903(2); Welf. & Inst. Code, § 224.1, subd. (c).) It does not include great-grandparents." (*In re D.S., supra*, 46 Cal.App.5th at p. 1053.) The department met this requirement by interviewing parents as well as Jose O., the only "extended family member" identified by father, who recalled that his deceased father and deceased grandmother were Apache. Thus, there was no violation of section 224.2, subdivision (e)(1).

---

stated in relevant part: " 'That as of October 13, 2021, the Court Found that the [ICWA] Does Not Apply.' " This language reflects that parents simply agreed the juvenile court found on October 13, 2021, that the ICWA does not apply. They did not, however, agree with the substance of the court's finding, much less waive their right to challenge it. In any event, the Indigenous American tribe has a right to intervene in proceedings involving an Indigenous American child, and parents have no ability to waive this right on the tribe's behalf. (See *In re Isaiah W., supra*, 1 Cal.5th at p. 8.)

Parents next claim the department was required, but failed, to obtain Jose O.'s birth date, birthplace and current and past residences, citing section 224.3, subdivision (a)(3)(C). This provision is not applicable. Under section 224.3, subdivision (a)(3)(C), if there is *reason to know* an Indigenous American child is involved, notice must be sent with the following information: "All names known of the Indian child's biological parents, grandparents, and great grandparents . . . , including maiden, married, and former names or aliases, as well as their current and former addresses, birth dates, places of birth and death, tribal enrollment information of other direct lineal ancestors of the child, and any other identifying information, if known." (§ 224.3, subd. (a)(3)(C), (5)(C).)

Here, the only allegation is that the department had "reason to believe" minor could have Indigenous American ancestry.[5] (See § 224.2, subd. (e)(1).) Parents have made no showing, on appeal or below, that there is "reason to know" minor is an "Indian child" within the meaning of the ICWA.[6] (See

---

[5] There is "reason to believe" a child is an "Indian child" whenever "the court, social worker, or probation officer has information suggesting that either the parent of the child or the child is a member or may be eligible for membership in an Indian tribe. Information suggesting membership or eligibility for membership includes, but is not limited to, information that indicates, but does not establish, the existence of one or more of the grounds for *reason to know* enumerated in paragraphs (1) to (6), inclusive, of subdivision (d)." (§ 224.2, subd. (e)(1), italics added.)

[6] As stated *ante*, there is a "reason to know" a child is an "Indian Child" in the following circumstances: "(1) A person having an interest in the child . . . informs the court that the child is an Indian child. [¶] (2) The residence . . . of the child [or] the child's parents . . . is on a reservation or in an Alaska Native village. [¶] (3) Any participant in the proceeding . . . informs the court that it has discovered information indicating that the child is an Indian child. [¶] (4) The child . . . gives the court reason to know that the child is an Indian child. [¶] (5) The court is informed that the child is or has been a ward of a tribal court. [or] [¶] (6) The court is informed that either parent or the child

10

§ 224.2, subd. (d).)  Accordingly, the department's inquiry requirements were less stringent.  (*In re D.S., supra,* 46 Cal.App.5th at p. 1049 ["The sharing of information with tribes [when there is reason to believe a child may have Indian ancestry] is distinct from formal ICWA notice, which requires a 'reason to know' "].)

Specifically, "[t]he required further inquiry [in 'reason to believe' cases] includes (1) interviewing the parents and extended family members; (2) contacting the [BIA] and State Department of Social Services; and (3) contacting tribes the child may be affiliated with, and anyone else, that might have information regarding the child's membership or eligibility in a tribe.  At this stage, contact with a tribe 'shall, at a minimum,' include telephone, facsimile, or electronic mail contact to each tribe's designated agent for receipt of ICWA notice, and 'sharing information identified by the tribe as necessary for the tribe to make a membership or eligibility determination, as well as information on the current status of the child and the case.'  (§ 224.2, subd. (e)(3).)"  (*In re D.S., supra,* 46 Cal.App.5th at p. 1049, fns. omitted.)  The department met these requirements.

First, the department interviewed parents and Jose O., who, as mentioned, was the only relative that father identified during the initial ICWA inquiry.[7]  Second, the department notified the Sacramento area director of the BIA and the State Department of Social Services.  Lastly, based on the results of its inquiry, the department contacted eight Apache tribes[8] that minor could possibly be affiliated with and provided them with

possess [*sic*] an identification card indicating membership or citizenship in an Indian tribe."  (§ 224.2, subd. (d).)

[7] Mother denied having Indigenous American ancestry.

[8] These eight tribes are the Apache Tribe of Oklahoma, Fort Sill Apache Tribe of Oklahoma, Jicarilla Apache Nation, Mescalero Apache Tribe,

information in its possession necessary for the tribes to make an eligibility determination as well as information regarding minor and the current status of her case, including notice of the upcoming disposition hearing on October 8, 2020. (§ 224.2, subd. (e)(3).) Thus, again, there was no ICWA violation.

Finally, we address parents' complaint that the department neglected to document its efforts to investigate or seek clarification from Jose O. regarding father's claim that his grandmother may have been a member of the "Comchado Apache" tribe. According to parents, "[t]here are no Federally recognized Apache tribes in Texas [citation], but there are only three Federally recognized tribes located in Texas: Coushatta [Alabama-Coushatta] Tribe of Texas, Kickapoo Traditional Tribe of Texas, and Ysleta del Sur Pueblo. [Citation.]" Father's "Comchado" reference, parents insist, could have been a mispronunciation of "Coushatta." This speculative argument fails.

The department had the burden to "obtain all possible information about the minor's potential Indian background" in order to provide it to the BIA and pertinent tribes. (*In re Louis S.* (2004) 117 Cal.App.4th 622, 630; *In re Y.W., supra*, 70 Cal.App.5th at p. 557.) In deciding whether the department met this burden, we view the record in a light most favorable to upholding the court's parental termination order. (*In re Charlotte V., supra*, 6 Cal.App.5th at p. 57.) Applying this standard, parents cannot establish the department failed its burden to obtain "all possible information" about minor's possible Indigenous American ancestry based on father's "Comchado" comment. As mentioned, the department did in fact interview Jose O.

---

San Carlos Apache Tribe, Tonto Apache Tribe of Arizona, White Mountain Apache Tribe, and Yavapai-Apache Nation.

regarding the family's Indigenous American ancestry. Jose O. identified his father and grandmother (both deceased) as having Apache ancestry, not "Comchado" or "Coushatta" ancestry. Based on this information, the department sent notices to the above identified Apache tribes. These efforts satisfied the department's inquiry burden. Even were we to agree with parents the department could have taken additional steps to investigate father's "Comchado" statement or to document Jose O.'s response (if any) to father's statement, we know of no statute that required the department to do so.[9] (See *In re D.S., supra,* 46 Cal.App.5th at p. 1053 ["The Agency is not required to 'cast about' for information or pursue unproductive investigative leads"]; *In re Antoinette S.* (2002) 104 Cal.App.4th 1401, 1413 ["[a social services agency's] obligation is only one of inquiry and not an absolute duty to ascertain or refute Native American ancestry"].)

Accordingly, parents' challenges to the adequacy of the department's ICWA inquiry fail.

## B.      Notice.

As mentioned, with respect to notice, section 224.2, subdivision (e)(2)(c) required the department to contact pertinent tribes and, as to those tribes, to "shar[e] information identified by the tribe as necessary for the tribe to make a membership or eligibility determination, as well as information on the current status of the child and the case." (Accord, *In re D.S., supra,* 46 Cal.App.5th at pp. 1053–1054.)

Here, parents acknowledge the department mailed ICWA-030 form notices regarding minor's possible Indigenous American ancestry to eight

---

[9] Based on this same reasoning, we reject parents' related argument that the department violated ICWA by failing to send ICWA notice to the three federally recognized Texas tribes: the Alabama-Coushatta Tribe of Texas, the Kickapoo Traditional Tribe of Texas, and Ysleta del Sur Pueblo.

Apache tribes. Yet they claim the department's notice efforts were inadequate because (1) the notices omitted J.O.'s birth date, birthplace, and current or former addresses; (2) Jose O.'s name was listed in the wrong place (as the paternal great-grandfather rather than the paternal grandfather); and (3) the notices, in some instances, were addressed to the wrong designated ICWA representative for the tribe or mailed to the incorrect address.

Parents' first claim, relating to the department's omission of Jose O.'s birth date, birth place and addresses on the ICWA-030 notice, fails for reasons discussed *ante* (pp. 10–12). Section 224.3, subdivision (a)(5)(C), the provision requiring the ICWA notice to include these categories of information, only applies if "the court, a social worker, or probation officer knows or has reason to know . . . that an Indian child is involved . . . ." (§ 224.3, subd. (a).) Here, there was only reason to believe minor could have Indigenous American ancestry.

As for parent's complaints that J.O.'s name was listed in the wrong place and that in some instances the notices were addressed to the wrong designated ICWA representative or mailed to the wrong address, the department concedes errors but insists they were harmless. (See *In re Y.W., supra*, 70 Cal.App.5th at p. 558.) We agree.

Parents correctly state that the department misidentified Jose O. as minor's paternal great-grandfather rather than her paternal grandfather. However, we do not find this error prejudicial. Jose O. did not himself claim tribal membership. Rather, Jose O. stated that his father, Riley O., was Apache. Riley O. was correctly identified on the ICWA-030 notices as minor's paternal great-grandfather. On this record, there is no basis to conclude that, had the tribe known Jose O.'s correct relationship to minor, the tribe

14

would have made a different determination as to minor's Indigenous American heritage. (*Nicole K. v. Superior Court, supra*, 146 Cal.App.4th at p. 784 ["Because petitioner did not claim she had a direct connection to any tribe, there is no basis to believe that providing her correct year of birth would have produced different results concerning the minors' Indian heritage"]; *In re J.M.* (2012) 206 Cal.App.4th 375, 382 [failure to include names of great-great-grandparents in ICWA notice was harmless where the record showed additional information would not have been meaningful to the inquiry].)

Lastly, we turn to the department's errors in mailing the ICWA-030 forms to the wrong tribal address or the wrong designated ICWA representative. Notwithstanding these errors, the record contains a certified mail receipt signed by a tribal representative for each ICWA notice mailed by the department. Under these circumstances in which the tribes undisputedly had actual notice, reversal is not required. Parents cannot show a reasonable probability they would have received a more favorable result absent the mailing errors. (*In re J.M., supra*, 206 Cal.App.4th at p. 382.)

## DISPOSITION

The February 9, 2022 order to terminate defendants' parental rights is affirmed.

15

_____

Jackson, P. J.


WE CONCUR:


_____

Simons, J.


_____

Burns, J.


A164570/*Humboldt County Dept. of Health and Human Services v. Kendra S.*

16